**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **ESTECH SYSTEMS IP, LLC,** | |
| Plaintiff, | Case No. 2:26-cv-457 |
| **v.** | ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT |
| **SAMSUNG ELECTRONICS CO., LTD., and SAMSUNG ELECTRONICS AMERICA, INC.,** | JURY TRIAL DEMANDED |
| Defendants. | |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Estech Systems IP, LLC ("Estech") files this Original Complaint for patent infringement against Samsung Electronics Co., Ltd. ("SEC") and Samsung Electronics America, Inc. ("SEA") (collectively, "Samsung") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

### BACKGROUND AND NATURE OF THE SUIT

1. This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code. This case asserts infringement of United States Patent Nos. 7,466,696 (the "'696 Patent"), 7,916,651 (the "'651 Patent"), and 8,249,590 (the "'590 Patent") (collectively, "the Patents-in-Suit").

2. The Patents-in-Suit are owned by Estech.

### THE PARTIES

3. Estech Systems IP, LLC is a Texas limited liability company with its principal place of business at 5124 Arrowhead Lane, Plano, TX 75093-5012.

4. Defendant Samsung Electronics Co., Ltd. is a corporation organized and existing

under the laws of South Korea. It has its principal place of business at 129 Samsung-ro, Yeongtong-gu, Suwon-si, Gyeonggi-do 16677, Republic of Korea.  SEC designs, manufactures, makes, uses, imports into the United States, sells, and/or offers for sale in the United States SEC smartphones and tablets.  SEC's smartphones and tablets are marketed, used, offered for sale, and/or sold throughout the United States, including within this District.  SEC may be served via its general manager, SEA, in California, or at least by process under the Hague Convention.

5.      Defendant Samsung Electronics America, Inc. is a corporation organized under the laws of the State of New York.  On information and belief, SEA's headquarters are located at 700 Sylvan Avenue, Englewood Cliffs, New Jersey 07632, and SEA also maintains offices and facilities in Texas, including in Plano, Texas.  SEA is a wholly owned subsidiary of SEC and oversees domestic sales and distribution of Samsung's consumer electronics products, including the products accused of infringement in this case.  SEA may be served via its registered agent, CT Corporation System, 330 N. Brand Blvd., Glendale, CA 91203.

## JURISDICTION AND VENUE

6.      This is an action for infringement of United States patents arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

7.      The Court has personal jurisdiction over each Defendant consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute.

8.      Each Defendant has regularly and systematically transacted business in Texas, directly or through subsidiaries or intermediaries, and/or committed acts of patent infringement in Texas as alleged more particularly below.

9.	Samsung has placed infringing products into the stream of commerce by shipping those products into Texas or knowing that the products would be shipped into Texas.

10.	In addition, on information and belief, Samsung's business relating to mobile devices, including devices accused of infringement in this Action, is conducted at its Texas facilities.

11.	Venue is proper in this District as to Defendant SEC under 28 U.S.C. § 1391(c)(3) because SEC is a foreign corporation organized under the laws of South Korea and may be sued in any judicial district, including the Eastern District of Texas.

12.	Venue is proper in this District as to Defendant SEA under 28 U.S.C. § 1400(b) because SEA has committed acts of infringement in this District and has a regular and established place of business in this District.

13.	On information and belief, SEA has a regular and established place of business in Plano, Texas, including at 6625 Excellence Way, Plano, Texas 75023.  SEA's Plano facility is a physical place in this District from which SEA conducts business relating to Samsung products and services.

14.	On information and belief, SEA maintains regular business operations and employs personnel at its Plano, Texas facility, including personnel involved in Samsung's U.S. operations, customer experience, sales, support, product operations, technical operations, engineering, management, and/or related functions.

15.	On information and belief, Samsung's business relating to mobile devices, including smartphones and tablets accused of infringement in this Action, is conducted at Samsung facilities in Texas, including facilities in this District.

16. Samsung has placed infringing products into the stream of commerce by shipping those products into Texas, including this District, or by knowing and intending that those products would be shipped into Texas, including this District.

17. Samsung makes, uses, sells, offers for sale, imports, markets, distributes, supports, repairs, services, and/or demonstrates Samsung-branded smartphones, cellular-enabled tablets, and related mobile devices in this District, including the products accused of infringement herein.

18. Defendant SEA has committed acts of infringement in this District by commercializing, marketing, offering for sale, selling, distributing, servicing, supporting, repairing, testing, configuring, demonstrating, and/or using certain Samsung-branded devices, including but not limited to phones and tablets accused of infringement in this Action.

19. Accordingly, venue is proper in this District as to both SEC and SEA.

### ESTECH

20. Estech began as an affiliate of Estech Systems, Inc. ("ESI") which for more than 35 years has been a leading U.S.-based provider of end-to-end business phone solutions, with its operations based in Plano, Texas.

21. Since 1987, ESI sold more than 400,000 solutions to its customers, working with more than 1,500 certified partners nationwide.  Its customers include small and large businesses across the country.

22. Recognizing that business does not get done without communication, ESI has provided powerful products that are easy and simple to use.  ESI's products are engineered to make intelligent technology that is intuitive and user-friendly, empowers employee productivity, and fuels customer satisfaction.

23.     ESI's technology is American engineered.  From its Plano headquarters, ESI has provided a full solutions portfolio of modern business communications solutions, including Cloud, Hybrid, Pure IP, and SIP dial tone products.  ESI's end-to-end product offerings have empowered its customers to choose the product features they need and want.

24.     ESI's products have included the most integrated cloud PBX in the market—the award-winning ESI Cloud PBX; Voice over IP (VoIP) products and systems; and on-premises products.  A cloud-based PBX is a sophisticated telephone exchange system that uses a cloud infrastructure to provide communication services, such as telephony services.

25.     VoIP transmits and receives voice communications over data networks, such as the Internet or private networks, using the Internet Protocol (IP).

26.     VoIP systems offer several advantages over traditional phone systems including, but not limited to, lower cost and more efficient network management.

27.     VoIP systems also enable integration of additional communication services.

28.     ESI cloud-based VoIP products have handled billions of call minutes.

29.     ESI also provides U.S.-based, best-in-class technical support for its customers.

### THE PATENTS-IN-SUIT

30.     The Patents-in-Suit are generally directed to innovations in cell phone technology to provide better user experience through establishing seamless connectivity.

### The '696 Patent

31.     The '696 Patent, titled "Services Convergence Among Heterogeneous Wired and Wireless Networks," issued on December 16, 2008, claims priority to May 14, 2003, and expired on or about October 8, 2025.  A copy of the '696 Patent is attached as Exhibit A.

32.      The '696 Patent discloses and claims improvements to heterogeneous network

communications, including systems, computer-readable media, and methods that allow a terminal to communicate through alternative access networks, such as IP networks, wireless local area networks, and cellular networks, while maintaining communication with another terminal through a backbone network.  For example, claim 5 of the '696 Patent claims computer readable media storing executable instructions, including a session convergence layer and a transport convergence layer, configured to facilitate communication between a first terminal and a second terminal through a heterogeneous communication system having a first access network, a second access network, and a backbone network, and to cause the first terminal to receive or transmit information from a selected one of the first and second access networks.

33.      The claims of the '696 Patent are not directed to an abstract idea.  For example, claim 5 does not merely claim the general concept of "selecting a network" or "routing information."  Instead, claim 5 recites a specific computer-readable-media implementation for improving communications in heterogeneous wired and wireless networks.  The claim requires executable instructions organized into a session convergence layer and a transport convergence layer, and further requires those instructions to facilitate communication through a heterogeneous communication system in which a first access network and a second access network each provide access for a first terminal to a backbone network, with each access network configured to operate as an alternative to the other.  The claim further requires the backbone network to transmit information from the selected access network to a second terminal and requires the instructions to cause the first terminal to receive or transmit information from the selected access network.  Taken as a whole, claim 5 is directed to a specific technological improvement in network communications: enabling a terminal to communicate over heterogeneous access networks that can operate as alternatives to one another while preserving communication through a backbone

6

network to another terminal.

34. The claimed inventions of the '696 Patent are not limited to well-understood, routine, or conventional activity. The specification explains that prior network-convergence techniques did not provide the same flexibility for determining a communication medium on a group-by-group basis, did not allow available communication options to change dynamically, and were limited to core-network nodes such as switches, routers, and media gateways. The '696 Patent addresses those technical limitations by disclosing a terminal-side architecture in which a session convergence layer coordinates resource availability, application requirements, resource management, and user or implementation policies, while a transport convergence layer makes decisions about using one of multiple available heterogeneous networks to communicate information to a peer. Claim 5 captures that improvement by requiring computer-readable media storing executable instructions comprising both a session convergence layer and a transport convergence layer, configured to facilitate communication through a heterogeneous communication system having alternative access networks and a backbone network, and to cause the terminal to receive or transmit information using a selected access network. Taken as a whole, the claimed inventions include inventive components that improve the functioning and operation of networked communication devices by enabling communications to continue through selected heterogeneous access networks, including wired, wireless LAN, cellular, or IP networks, while reducing disruption to the user or communicating device.

35. The written description of the '696 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the

invention.

36.    Estech is the owner and assignee of all rights, title, and interest in and under the '696 Patent.

37.    Estech has standing to sue for infringement of the '696 Patent.

**The '651 Patent**

38.    The '651 Patent, titled "Services Convergence Among Heterogeneous Wired and Wireless Networks," issued on March 29, 2011, and expired on or about May 13, 2024.  The '651 Patent is a continuation of the application that issued as the '696 Patent, and claims priority to May 14, 2003.  A copy of the '651 Patent is attached as Exhibit B.

39.    The '651 Patent discloses and claims improvements to heterogeneous network communications, including apparatuses, methods, and computer-readable media for enabling communications through alternative access networks, such as IP networks, wireless access networks, wireless local area networks, and cellular networks.  For example, claim 1 of the '651 Patent claims an apparatus comprising one or more machine-readable media configured to store a program comprising executable instructions and a processor configured to execute those instructions, where the program is configured to facilitate communication with a first access network and a second access network that each provide access for a terminal to a backbone network, and are configured to operate as alternatives to one another.  Claim 1 further requires that the program comprise a session convergence layer and a transport convergence layer.

40.    The claims of the '651 Patent are not directed to an abstract idea.  For example, claim 1 does not merely claim the general concept of selecting, routing, or transmitting information.    Instead, claim 1 recites a specific apparatus architecture for improving communications in heterogeneous wired and wireless networks.  The claimed apparatus requires

8

machine-readable media storing a program, a processor coupled to the machine-readable media and configured to execute the program's instructions, and a program configured to facilitate communication with two access networks that each provide access for a terminal to a backbone network and that operate as alternatives to one another. The claimed program is further limited by its required session convergence layer and transport convergence layer. Taken as a whole, claim 1 is directed to a specific technological improvement in networked communication devices: enabling a terminal to communicate through heterogeneous access networks that can operate as alternatives to one another, using layered executable instructions to coordinate session-level and transport-level convergence.

41.     The claimed inventions of the '651 Patent are not limited to well-understood, routine, or conventional activity. The specification explains that then-existing convergence techniques did not provide the same flexibility for determining a communication medium on a group-by-group basis, did not allow available options to change dynamically, and were limited to core-network nodes such as switches, routers, and media gateways. The '651 Patent addresses those technical limitations through a terminal-side apparatus that uses executable instructions, a processor, and layered convergence functionality to coordinate communications across heterogeneous access networks. The session convergence layer coordinates resource availability, application requirements, resource management, and user or implementation policies, while the transport convergence layer makes decisions about using one of multiple available heterogeneous networks to communicate information to a peer. For example, claim 1 captures that improvement by requiring an apparatus with machine-readable media, a processor, a program configured to facilitate communication with first and second alternative access networks that each provide access to a backbone network, and both session-convergence and transport-convergence layers. Taken

9

as a whole, the claimed inventions include inventive components that improve the functioning and operation of networked communication devices by enabling communications to be coordinated across heterogeneous access networks, including wired, wireless LAN, cellular, wireless access, or IP networks, while reducing disruption to the user or communicating device.

42.     The written description of the '651 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

43.     Estech is the owner and assignee of all rights, title, and interest in and under the '651 Patent.

44.     Estech has standing to sue for infringement of the '651 Patent.

**The '590 Patent**

45.     The '590 Patent, titled "System, Method, and Apparatus for Voice Handoffs," issued on August 21, 2012, claims priority to August 16, 2005, and will expire on or about May 21, 2029.  A copy of the '590 Patent is attached as Exhibit C.

46.     The '590 Patent discloses and claims improvements to communication handsets that are capable of using different types of communication services, including cellular service and Wi-Fi service, while conserving power and maintaining the ability to respond to inbound or outbound communications.  For example, claim 1 of the '590 Patent claims a method for selecting a communication service in which a communication handset receives a request for an inbound or outbound communication while the handset is registered with one type of communication service but is not scanning for a second type of communication service; determines whether the second

type of communication service is available; switches a component of the handset from an asleep state to an awake state in response to the request; registers with the second type of communication service; compares metrics of the two types of communication services; selects between the services based on that comparison; and responds to the request using the selected service.

47.     The claims of the '590 Patent are not directed to an abstract idea.  For example, claim 1 does not merely claim the general concept of choosing between two communications networks.  Instead, claim 1 recites a specific method performed at a communication handset having particular operating states and network-service relationships.  The claimed method requires that the handset receive a request for an inbound or outbound communication while it is registered with one type of communication service but is not scanning for a second type of communication service. The claim further requires, in response to that request, determining whether the second service is available, switching a handset component from an asleep state to an awake state, registering the handset with the second service, comparing metrics of the two services, selecting between them based on the comparison, and responding to the communication request using the selected service. Taken as a whole, claim 1 is directed to a specific technological improvement in wireless communication handsets: conserving power by allowing a service-related component to remain asleep when a service is not being scanned, while still enabling the handset to awaken that component, evaluate an alternative communication service, and use the selected service to respond to a communication request.

48.     The claimed inventions of the '590 Patent are not limited to well-understood, routine, or conventional activity.  The specification explains that prior handsets could scan for both cellular and Wi-Fi signals, but continued scanning consumed battery power, while stopping scanning could cause the handset to miss opportunities when an unavailable service later became

available.  The specification further explains that the problem was aggravated when another party initiated a communication attempt, such as an incoming call, email, or chat request, because a handset that was not scanning for a service could fail to take advantage of that service even if it was available.  The '590 Patent addresses those technical problems through a handset-based power-management and service-selection process in which the handset can place a service-related component in an asleep state, receive a user-initiated or non-user-initiated request over an active service, wake the component used to determine whether the inactive service is available, register with that service, compare service metrics such as cost, power consumption, quality of service, signal strength, or user preferences, and respond to the request using the selected service. Representative claim 1 captures that improvement by requiring the combination of receiving the request while not scanning for the second service, switching a handset component from asleep to awake in response to the request, registering with the second service, comparing metrics, selecting between the services, and responding through the selected service.  Taken as a whole, the claimed inventions include inventive components that improve the functioning and operation of communication handsets by balancing power conservation with the ability to dynamically evaluate and use an alternative communication service for inbound or outbound communications.

49.    The written description of the '590 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

50.    Estech is the owner and assignee of all rights, title, and interest in and under the '590 Patent.

51.    Estech has standing to sue for infringement of the '590 Patent.

## ACCUSED SAMSUNG PRODUCTS AND FUNCTIONALITY

52.    On information and belief, Defendants Samsung Electronics Co., Ltd. ("SEC") and Samsung Electronics America, Inc. ("SEA") (collectively, "Samsung") have designed, developed, tested, manufactured, used, imported, marketed, offered for sale, sold, distributed, and supported mobile communication devices in the United States, including smartphones and cellular-enabled tablets sold under the Samsung Galaxy brand, under other Samsung brand names, or under carrier-specific, model-specific, regional, predecessor, successor, abbreviated, or renamed product names.

53.    On information and belief, Samsung's accused **mobile communication devices** include **Samsung-branded smartphones** and **cellular-enabled Samsung-branded tablets** that include Wi-Fi and cellular communication capability and that are configured to communicate over heterogeneous communication networks, including Wi-Fi / wireless local area networks and cellular / mobile data networks.  The accused **Samsung mobile communication devices** include, without limitation, **Samsung Galaxy smartphones** and **cellular-enabled Samsung Galaxy Tab tablets**, including LTE and/or 5G variants.  Samsung's own public materials describe Samsung's smartphone lineup as Galaxy smartphones, including Samsung Galaxy S-series smartphones, Samsung Galaxy Note-series smartphones, Samsung Galaxy Z-series foldable smartphones, Samsung Galaxy A-series smartphones, Samsung Galaxy XCover smartphones.  Samsung's own public materials describe Samsung's tablet lineup as cellular-enabled Samsung Galaxy Tab tablets, including LTE and/or 5G variants.  *See, e.g.,*

- https://www.samsung.com/us/smartphones/

- https://www.samsung.com/us/mobile/phones/all-phones/

- https://www.samsung.com/us/explore/mobile/buying-guide/phone-models-explained/

- https://www.samsung.com/us/tablets/

- https://www.samsung.com/us/mobile/tablets/all-tablets/

- https://www.samsung.com/us/app/mobile/5g/products/

54.    The **Samsung smartphones** accused in this Complaint include, without limitation and to the extent made, used, tested, sold, offered for sale, imported, distributed, or supported in the United States during the applicable limitations periods, Samsung Galaxy S-series smartphones, including Galaxy S10e, S10, S10+, S10 5G, S20 5G, S20+ 5G, S20 Ultra 5G, S20 FE, S20 FE 5G, S21 5G, S21+ 5G, S21 Ultra 5G, S21 FE 5G, S22, S22+, S22 Ultra, S23, S23+, S23 Ultra, S23 FE, S24, S24+, S24 Ultra, S24 FE, S25, S25+, S25 Ultra, S25 Edge, S26, S26+, S26 Ultra, and later Samsung Galaxy S-series smartphones incorporating the same or substantially similar accused functionality. The Samsung smartphones accused in this Complaint further include, without limitation and to the extent made, used, tested, sold, offered for sale, imported, distributed, or supported in the United States during the applicable limitations periods, Samsung Galaxy Note-series smartphones, Samsung Galaxy Z-series smartphones, Samsung Galaxy A-series smartphones, Samsung Galaxy XCover smartphones, and any other Samsung-branded smartphone series incorporating the same or substantially similar accused functionality, including Galaxy Note10, Note10+, Note10+ 5G, Note20 5G, Note20 Ultra 5G, Galaxy Fold, Galaxy Fold 5G, Galaxy Z Flip, Galaxy Z Flip 5G, Galaxy Z Fold2 5G, Galaxy Z Flip3 5G, Galaxy Z Fold3 5G, Galaxy Z Flip4, Galaxy Z Fold4, Galaxy Z Flip5, Galaxy Z Fold5, Galaxy Z Flip6, Galaxy Z Fold6, Galaxy Z Flip7, Galaxy Z Fold7, Galaxy Z TriFold, Galaxy A01, A02s, A11, A12, A13, A13 5G, A14 5G, A15 5G, A16 5G, A17 5G, A21, A23 5G, A25 5G, A26 5G, A32 5G, A35 5G, A36 5G, A37 5G, A42 5G, A51, A51 5G, A52 5G, A53 5G, A54 5G, A56 5G, A57 5G, A71 5G,

Galaxy XCover Pro, Galaxy XCover6 Pro, Galaxy XCover7 Pro, and later Samsung Galaxy Note, Z, A, and XCover smartphones incorporating the same or substantially similar accused functionality. The Samsung smartphones accused in this Complaint also include any Samsung-branded, carrier-branded, renamed, regional, predecessor, successor, model-specific, or substantially similar smartphones, regardless of whether marketed with the word "Galaxy," that include Wi-Fi and cellular communication capability and incorporate the same or substantially similar Accused Connectivity Functionality. *See, e.g.,*

- https://www.samsung.com/us/smartphones/

- https://www.samsung.com/us/mobile/phones/all-phones/

- https://www.samsung.com/us/explore/mobile/buying-guide/phone-models-explained/

55.    The **Samsung Galaxy tablets** accused in this Complaint include, without limitation and to the extent made, used, tested, sold, offered for sale, imported, distributed, or supported in the United States during the applicable limitations periods, cellular-enabled, LTE-enabled, and/or 5G-enabled variants of Samsung Galaxy Tab tablets, including Galaxy Tab S7, Tab S7+, Tab S7 FE, Tab S8, Tab S8+, Tab S8 Ultra, Tab S9, Tab S9+, Tab S9 Ultra, Tab S9 FE, Tab S9 FE+, Tab S10+, Tab S10 Ultra, Tab S10 FE, Tab S10 FE+, Tab S10 Lite, Tab S11, Tab S11 Ultra, Tab A7, Tab A7 Lite, Tab A8, Tab A9+, Tab A11+, Tab Active3, Tab Active4 Pro, Tab Active5, Tab Active5 Pro, and later Samsung Galaxy tablets incorporating the same or substantially similar accused functionality. The Samsung tablets accused in this Complaint also include any Samsung-branded, carrier-branded, renamed, regional, predecessor, successor, model-specific, or substantially similar cellular-enabled tablets, regardless of whether marketed with the word "Galaxy," that include Wi-Fi and cellular communication capability and incorporate the same or substantially similar Accused Connectivity Functionality. Unless otherwise stated,

references in this Complaint to accused Samsung tablets refer to cellular-enabled, LTE-enabled, and/or 5G-enabled tablet variants, and not to Wi-Fi-only tablet variants. *See, e.g.,*

- https://www.samsung.com/us/tablets/

- https://www.samsung.com/us/mobile/tablets/all-tablets/

- https://www.samsung.com/us/app/mobile/5g/products/

- https://www.samsung.com/us/tablets/galaxy-tab-s10/buy/galaxy-tab-s10-plus-5g-256gb-moonstone-gray-t-mobile-sku-sm-x828uzaaxau/

- https://www.samsung.com/us/tablets/galaxy-tab-s10-fe/buy/galaxy-tab-s10-fe-5g-gray-128gb-sku-sm-x528uzaavzw/

- https://www.samsung.com/us/tablets/galaxy-tab-a11-plus/

56.     The **Samsung-branded smartphones** and **cellular-enabled Samsung-branded tablets** identified above, together with substantially similar Samsung-branded mobile communication devices incorporating the same or substantially similar accused functionality, are referred to herein as the "**Accused Samsung Products**."  The term "Accused Samsung Products" is not limited to devices marketed with the word "Galaxy" and includes any Samsung-branded, carrier-branded, renamed, regional, predecessor, successor, model-specific, or substantially similar smartphone or cellular-enabled tablet that includes Wi-Fi and cellular communication capability and incorporates the same or substantially similar Accused Connectivity Functionality.

57.     On information and belief, the Accused Samsung Products include hardware, software, and firmware components for communicating over both Wi-Fi and cellular networks, including, without limitation, one or more processors, machine-readable memory, operating-system software, Samsung One UI software, Android software, connectivity-management software, cellular baseband and modem components, Wi-Fi transceivers, cellular transceivers,

16

antennas, SIM and/or eSIM functionality, network-stack software, applications, settings, and associated executable instructions.

58.    On information and belief, the Accused Samsung Products store and execute software and firmware that manage communications over multiple communication networks, including Wi-Fi / WLAN networks and cellular / mobile data networks.  On information and belief, such software and firmware include executable instructions that identify available networks, identify network characteristics, determine network quality, stability, speed, signal strength, service availability, power-consumption conditions, user preferences, usage patterns, application requirements, and/or other policy criteria, and select, switch, maintain, enable, disable, activate, wake, poll, scan for, register with, or communicate using one or more available communication networks.

59.    The accused functionality of the Accused Samsung Products includes, without limitation, Samsung's Intelligent Wi-Fi functionality, Switch to mobile data functionality, Switch to better Wi-Fi networks functionality, Turn Wi-Fi on/off automatically functionality, Wi-Fi power saving mode, Wi-Fi Calling functionality, Calling Preference functionality, Mobile network preferred functionality, Wi-Fi preferred functionality, Auto network switch functionality, Smart Network Switch functionality, Switch to Mobile Data functionality, and any predecessor, successor, renamed, carrier-specific, model-specific, software-version-specific, or substantially similar functionality for selecting, switching, preferring, falling back to, or otherwise managing communications over Wi-Fi and cellular networks.  These functionalities are collectively referred to herein as the "**Accused Connectivity Functionality**."

60.    On information and belief, the Accused Connectivity Functionality is implemented in, stored on, and executed by the Accused Samsung Products through software and

firmware stored in machine-readable media and executed by one or more processors. On information and belief, the Accused Connectivity Functionality operates with the Wi-Fi and cellular hardware components of the Accused Samsung Products to manage communication over heterogeneous networks, including Wi-Fi / WLAN access networks and cellular / mobile data access networks.

61.     On information and belief, the Accused Connectivity Functionality determines whether a Wi-Fi network is available, stable, unstable, slow, faster, stronger, weaker, preferred, not preferred, suspicious, suitable, or otherwise appropriate for communications. On information and belief, the Accused Connectivity Functionality also determines whether cellular or mobile data service is available, preferred, suitable, or otherwise appropriate for communications. Based on such determinations, the Accused Connectivity Functionality selects between Wi-Fi / WLAN communication service and cellular / mobile data communication service, switches between such services, falls back to an alternative service, turns Wi-Fi on or off, prioritizes real-time data, analyzes Wi-Fi traffic to reduce battery usage, and/or causes the Accused Samsung Products to communicate using a selected network or service.

62.     On information and belief, when the Accused Connectivity Functionality is enabled or otherwise operating, the Accused Samsung Products switch to mobile data when a Wi-Fi connection is unstable, slow, unavailable, or otherwise unsuitable; switch back to Wi-Fi when Wi-Fi becomes strong, available, or suitable; automatically switch to better Wi-Fi networks when available; turn Wi-Fi on or off in frequently used locations; display or use network-quality information such as speed and stability; prioritize real-time data for applications such as games, video calls, voice calls, and other tasks that may experience lag; and analyze Wi-Fi traffic to reduce battery usage.

63.     On information and belief, when Wi-Fi Calling is enabled, the Accused Samsung Products are configured to make and receive voice calls over a Wi-Fi network connection while also using active cellular service through a SIM or eSIM.  On information and belief, the Accused Samsung Products allow a user to select a preferred network for calls, including Wi-Fi preferred or cellular/mobile network preferred settings, and automatically use an alternative network when the preferred network is unavailable.  On information and belief, such functionality causes the Accused Samsung Products to select between Wi-Fi and cellular communication services for voice calls and to respond to inbound and outbound voice-call requests using the selected service.

64.     On information and belief, the Accused Samsung Products and Accused Connectivity Functionality operate in a heterogeneous communication environment that includes at least a first access network, a second access network, and a backbone network.  For example, an Accused Samsung Product may communicate through a Wi-Fi / WLAN / IP network as a first access network and through a cellular / mobile data network as a second access network, or vice versa.  Each of those access networks provides access for the Accused Samsung Product to an Internet Protocol network, carrier network, public switched telephone network, IMS network, VoLTE network, VoWiFi network, provider server, application server, messaging server, web server, cloud server, or other backbone network or network resource.

65.     On information and belief, in ordinary operation, an Accused Samsung Product operates as a first terminal that communicates with one or more second terminals or network endpoints, including other smartphones, tablets, computers, servers, provider servers, application servers, carrier-network equipment, messaging endpoints, voice-call endpoints, video-call endpoints, web servers, and other communication devices or systems.  On information and belief, the Accused Samsung Product selectively receives or transmits information through a selected one

of multiple available access networks, including Wi-Fi / WLAN and cellular / mobile data networks, while those networks operate as alternatives to one another.

66.     On information and belief, the Accused Connectivity Functionality includes a session-management or session-convergence functionality that manages resources, sessions, user preferences, application requirements, communication requirements, and/or network availability across multiple heterogeneous networks.  On information and belief, the Accused Connectivity Functionality also includes a transport-management or transport-convergence functionality that determines which available network or service should be used to send, receive, or continue communication of information, packets, data, voice, video, messages, web traffic, email, chat communications, application traffic, and/or other communications to or from a communication peer or network endpoint.

67.     On information and belief, the Accused Samsung Products perform the Accused Connectivity Functionality automatically, semi-automatically, and/or based on user settings, preferences, software configurations, carrier configurations, or default settings.  The availability and labeling of particular features may vary by model, carrier, software version, region, SIM/eSIM status, or user setting.  Such variations do not materially alter the accused operation where the Accused Samsung Products include functionality for selecting, switching, falling back to, or otherwise managing communications between Wi-Fi / WLAN and cellular / mobile data networks.

68.     When this Complaint refers to "**Accused Instrumentalities**," it refers to the **Accused Samsung Products** and the **Accused Connectivity Functionality**, including the hardware, software, firmware, processors, memory, radios, transceivers, antennas, modems, SIM/eSIM functionality, operating systems, network-stack software, applications, settings, support materials, and associated systems used to perform, enable, support, or encourage the

accused network-selection, network-switching, network-fallback, Wi-Fi Calling, Wi-Fi power-management, and heterogeneous-network communication functionality described above.

69.     The Accused Instrumentalities include the Accused Samsung Products alone and when used in conjunction with Wi-Fi networks, wireless local area networks, cellular networks, mobile data networks, Internet Protocol networks, carrier networks, IMS networks, VoLTE networks, VoWiFi networks, provider servers, application servers, web servers, cloud servers, messaging servers, voice-call endpoints, video-call endpoints, and other communication devices, terminals, and network infrastructure used to send, receive, route, maintain, continue, or respond to communications.

70.     On information and belief, Samsung has directly used the Accused Instrumentalities in the United States during the applicable limitations periods, including by testing, operating, demonstrating, configuring, validating, certifying, troubleshooting, repairing, supporting, and using the Accused Samsung Products and Accused Connectivity Functionality through Samsung employees, agents, representatives, retail personnel, technical-support personnel, engineers, quality-assurance personnel, carrier-certification personnel, sales personnel, and other persons acting on Samsung's behalf.

71.     On information and belief, Samsung's own testing, quality assurance, carrier certification, sales demonstrations, retail demonstrations, technical-support activities, repair activities, and employee use of the Accused Instrumentalities have included use of the Accused Samsung Products with Wi-Fi and cellular networks to make or receive calls, send or receive messages, access web pages, send or receive emails, initiate or receive chat communications, use real-time data applications, use video-call applications, and otherwise communicate over selected Wi-Fi or cellular services.

72.    Samsung has also provided instructions, settings, user interfaces, support materials, marketing materials, technical-support materials, carrier-support materials, and software updates that describe, enable, encourage, or direct use of the Accused Connectivity Functionality by Samsung customers and end users.  Such materials include instructions and user-interface features for enabling or using Intelligent Wi-Fi, Switch to mobile data, Switch to better Wi-Fi networks, Turn Wi-Fi on/off automatically, Wi-Fi power saving mode, Wi-Fi Calling, network preferences, and related Wi-Fi / cellular fallback and switching functionality.

73.    For each count of infringement listed below, Estech incorporates and re-states the allegations contained in the preceding paragraphs above, including these General Allegations, as if fully set forth in each count of infringement.

## COUNT I – INFRINGEMENT OF THE '696 PATENT

74.    Estech incorporates herein the allegations made in paragraphs 1 through 73.

75.    Samsung has directly infringed (either literally or under the doctrine of equivalents) one or more claims of the '696 Patent, including, for example, claim 5, in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Instrumentalities.

76.    The Accused Instrumentalities include, for example, the Accused Samsung Products that were made, used, tested, sold, offered for sale, imported, distributed, or supported in the United States on or before October 8, 2025, including Samsung- branded smartphones and cellular-enabled Samsung-branded tablets having Wi-Fi and cellular communication capability and incorporating the Accused Connectivity Functionality.

77.    The Accused Instrumentalities infringe at least claim 5 of the '696 Patent.  Claim 5 recites computer readable media storing a plurality of executable instructions, including a session

convergence layer and a transport convergence layer, where the instructions are configured to facilitate communication between a first terminal and a second terminal through a heterogeneous communication system comprising a first access network, a second access network, and a backbone network, with the access networks configured to operate as alternatives to one another, and to cause the first terminal to receive or transmit information from a selected one of the first and second access networks.

78.    The Accused Samsung Products include computer readable media, including memory and storage, that store software, firmware, operating-system instructions, Samsung One UI instructions, Android instructions, network-stack instructions, radio-control instructions, Wi-Fi instructions, cellular instructions, and connectivity-management instructions. When executed by processors in the Accused Samsung Products, those instructions implement the Accused Connectivity Functionality and cause the Accused Samsung Products to communicate over heterogeneous networks, including Wi-Fi / WLAN access networks and cellular / mobile data access networks.

79.    In operation, an Accused Samsung Product can constitute or operate as a first terminal. The first terminal communicates with one or more second terminals or network endpoints, including other smartphones, tablets, computers, servers, web servers, application servers, messaging servers, voice-call endpoints, video-call endpoints, carrier-network equipment, and other communication devices or systems. The Accused Samsung Product communicates with such second terminals through a heterogeneous communication system that includes at least a first access network, a second access network, and a backbone network.

80.    The first and second access networks include, for example, Wi-Fi / WLAN / IP networks and cellular / mobile data networks. Each such access network provides access for the

Accused Samsung Product to a backbone network, including, for example, the Internet, an IP network, a carrier network, an IMS network, a VoLTE network, a VoWiFi network, a provider network, a web server network, an application server network, a cloud network, or other backbone network used to transmit information toward a second terminal.

81.    The first access network and second access network are configured to operate as alternatives to one another.  For example, the Accused Connectivity Functionality causes an Accused Samsung Product to use Wi-Fi when Wi-Fi is available, suitable, preferred, strong, fast, stable, or otherwise appropriate, and to use cellular / mobile data when Wi-Fi is unavailable, unstable, slow, weak, unsuitable, not preferred, or otherwise inappropriate.  Likewise, the Accused Connectivity Functionality causes the Accused Samsung Product to switch back to Wi-Fi when Wi-Fi becomes available, strong, stable, or suitable.  In that manner, Wi-Fi / WLAN and cellular / mobile data networks operate as alternative access networks.  *See, e.g.,*

- https://www.samsung.com/us/support/answer/ANS10002546

- https://docs.samsungknox.com/admin/knox-platform-for-enterprise/kbas/kba-360034073174

82.    The Accused Connectivity Functionality includes session-management or session-convergence functionality that manages, coordinates, or accounts for communication sessions, application requirements, resource availability, user preferences, network availability, network stability, network speed, network quality, signal strength, service availability, power consumption, and other criteria across heterogeneous access networks.  That functionality corresponds to the claimed session convergence layer.  The Accused Connectivity Functionality also includes transport-management or transport-convergence functionality that determines which available access network should be used to send, receive, maintain, or continue communications, including

packets, data, voice, video, messages, web traffic, email, chat communications, application traffic, and other information. The Accused Connectivity Functionality uses that transport-management functionality to select between Wi-Fi / WLAN and cellular / mobile data networks and to cause the Accused Samsung Product to receive or transmit information using the selected access network. That functionality corresponds to the claimed transport convergence layer. *See, e.g.,*

- https://developer.android.com/develop/connectivity/network-ops/reading-network-state
- https://developer.android.com/training/monitoring-device-state/connectivity-status-type

83.    Samsung's own materials confirm that the Accused Samsung Products include the accused network-selection and network-switching functionality. Samsung materials describe functionality including Intelligent Wi-Fi, Switch to mobile data, Switch to better Wi-Fi networks, Turn Wi-Fi on/off automatically, Wi-Fi power saving mode, and Wi-Fi Calling functionality. Samsung materials further describe switching to mobile data when Wi-Fi is unstable or slow, switching back to Wi-Fi when Wi-Fi is strong, automatically switching to better Wi-Fi networks, turning Wi-Fi on or off in frequently used locations, using mobile data when a Wi-Fi connection cannot be established, and enabling Wi-Fi Calling over Wi-Fi while using active cellular service through a SIM or eSIM. *See, e.g.,*

- https://www.samsung.com/us/support/answer/ANS10002546
- https://docs.samsungknox.com/admin/knox-platform-for-enterprise/kbas/kba-360034073174
- https://docs.samsungknox.com/admin/knox-configure/how-to-guides/profiles/configure-profile-settings/connectivity
- https://www.samsung.com/us/support/answer/ANS10001348

84.    Android materials likewise confirm that Android devices include software functionality for monitoring network connections, including Wi-Fi and mobile networks; attempting to fail over to another network when connectivity is lost; querying available networks; requesting and selecting networks for data traffic; identifying network transports such as Wi-Fi and mobile; identifying network capabilities such as Internet access, validation, and meteredness; and changing the default network between Wi-Fi and mobile networks.  On information and belief, the Accused Samsung Products use Samsung, Android, and related software and firmware to perform the Accused Connectivity Functionality described herein.  *See, e.g.,*

- https://developer.android.com/develop/connectivity/network-ops/reading-network-state

- https://developer.android.com/training/monitoring-device-state/connectivity-status-type

85.    Samsung's infringement of the '696 Patent occurred during the applicable limitations period and before the '696 Patent expired on October 8, 2025.  Estech does not assert induced infringement or contributory infringement of the expired '696 Patent in this Count

86.    Since issuance of the '696 Patent, neither Estech nor its predecessors or licensees have made, offered for sale, sold, or imported a product that practices any claim of the '696 Patent or that would otherwise require marking under 35 U.S.C. § 287.

87.    Estech may recover pre-suit damages for Samsung's infringement of the '696 Patent under 35 U.S.C. § 287.

88.    As a result of Samsung's infringement of the '696 Patent, Estech has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

**Direct infringement of the '696 Patent under 35 U.S.C. § 271(a)**

89.    On information and belief, Samsung directly infringes claim 5 and other non-method claims of the '696 Patent by selling and offering to sell the Accused Samsung Products in the United States.  When sold or offered for sale, the Accused Samsung Products already include computer readable media storing executable instructions that implement the Accused Connectivity Functionality, including the claimed session convergence layer and transport convergence layer. The Accused Samsung Products are therefore infringing articles when Samsung sells or offers to sell them in the United States.  *See, e.g.,*

- https://www.samsung.com/us/smartphones/all-smartphones
- https://www.samsung.com/us/terms-of-sale

90.    On information and belief, Samsung directly infringes claim 5 and other non-method claims of the '696 Patent by importing the Accused Samsung Products into the United States.  When imported, the Accused Samsung Products include memory and storage containing executable instructions that implement the Accused Connectivity Functionality, including the claimed session convergence layer and transport convergence layer.   Importation of those infringing Accused Samsung Products constitutes direct infringement of the non-method claims of the '696 Patent.  *See, e.g., id.*; *see also*

- https://www.samsung.com/us/support/answer/ANS10002546
- https://www.samsung.com/us/support/answer/ANS10001348

91.    On information and belief, to the extent Samsung makes, assembles, completes, refurbishes, reconditions, repairs, replaces, configures, flashes, updates, or otherwise creates an accused infringing configuration of the Accused Samsung Products in the United States, Samsung directly infringes claim 5 and other non-method claims of the '696 Patent by making infringing

products in the United States. Such conduct includes, for example, loading, installing, updating, validating, configuring, or restoring software or firmware that implements the Accused Connectivity Functionality on Accused Samsung Products in the United States. *See, e.g.,*

- https://www.samsung.com/us/smartphones/certified-re-newed-phones

- https://www.samsung.com/us/support/answer/ANS10002546

92.     Samsung also directly infringes the asserted claims of the '696 Patent by using the Accused Instrumentalities in the United States. Samsung's use includes, without limitation, testing, quality assurance, software validation, carrier certification, regulatory certification, field testing, interoperability testing, retail demonstration, customer demonstration, technical support, repair, refurbishment, replacement, troubleshooting, configuration, and ordinary employee use of Accused Samsung Products with Wi-Fi and cellular networks. *See, e.g.,*

- https://www.samsung.com/us/store

- https://www.samsung.com/us/support/service/locations

- https://www.samsung.com/us/support/contact

- https://www.samsung.com/us/support/service/we-come-to-you

- https://www.samsung.com/us/support/troubleshoot/TSG10004906

- https://www.samsung.com/us/support/answer/ANS10002546

- https://www.samsung.com/us/support/answer/ANS10001348.

93.     Samsung directly infringes the asserted claims, including any method claims, of the '696 Patent when Samsung personnel, agents, representatives, engineers, technicians, retail personnel, support personnel, repair personnel, or other persons acting on Samsung's behalf perform the claimed method steps in the United States using the Accused Instrumentalities. Those acts include facilitating communication between a first terminal and a second terminal through a

heterogeneous communication system having Wi-Fi / WLAN and cellular / mobile data access networks and a backbone network, where those access networks operate as alternatives to one another, and causing the first terminal to receive or transmit information from a selected access network.  *See, e.g.,* citations for the previous paragraph.

94.     Samsung performs such infringing method steps when it tests Accused Samsung Products in the United States.  For example, during development, validation, quality assurance, network interoperability testing, carrier-certification testing, field testing, software-update testing, troubleshooting, and repair testing, Samsung personnel and persons acting on Samsung's behalf use Accused Samsung Products with Wi-Fi and cellular networks to send and receive data, make and receive calls, send and receive messages, access web pages, use email, use chat communications, use video communications, and otherwise communicate through a selected Wi-Fi or cellular access network.  In those activities, the Accused Samsung Product operates as a first terminal communicating with a second terminal through a heterogeneous communication system comprising Wi-Fi / WLAN and cellular / mobile data access networks and a backbone network.  *See, e.g.,* citations for the previous 2 paragraphs.

95.     Samsung's public FCC-related filings and equipment-authorization records also support the allegation that Samsung performs, directs, controls, or causes testing of Accused Samsung Products for the U.S. market.  On information and belief, Samsung, Samsung personnel, and/or testing laboratories or certification entities acting for Samsung perform certification, pre-certification, regulatory, radio-frequency, wireless, Wi-Fi, cellular, and interoperability testing of Accused Samsung Products intended for sale and use in the United States.  On information and belief, Samsung obtains U.S. equipment authorization and performs or causes testing for Samsung Galaxy smartphones and cellular-enabled tablets intended for use in the United States.  To the

extent such testing is performed in the United States by Samsung personnel or by testing laboratories, certification bodies, contractors, or agents acting for Samsung and under Samsung's direction or control, such testing constitutes direct infringement by Samsung of the asserted claims, including any asserted method claims of the '696 Patent, when it uses Accused Samsung Products to perform the claimed heterogeneous-network communication functionality. Samsung, therefore, directly infringes the asserted claims when Samsung performs, directs, controls, or causes U.S. certification or FCC-related testing of Accused Samsung Products. Public FCC-related filings identify Samsung Electronics Co., Ltd. as the applicant for numerous Samsung devices. Estech does not allege that the FCC itself directly infringes; rather, Estech alleges that Samsung and persons acting for Samsung perform or cause infringing testing and certification activities for Samsung's Accused Samsung Products. *See, e.g.,*

- https://www.fcc.gov/engineering-technology/laboratory-division/general/equipment-authorization

- https://www.fcc.gov/general/equipment-authorization-procedures

- https://www.ecfr.gov/current/title-47/chapter-I/subchapter-A/part-2/subpart-J

- https://fcc.report/company/Samsung-Electronics-Co-L-T-D

96.    Samsung directly infringes the asserted claims, including any method claims, of the '696 Patent when Samsung employees and other persons acting on Samsung's behalf use Accused Samsung Products generally in the United States. On information and belief, Samsung employees use company-owned, demo, test, support, or personal Accused Samsung Products with Wi-Fi and cellular networks, including to make or receive calls, send or receive messages, access web pages, send or receive email, use chat applications, use video-call applications, use real-time data applications, and otherwise communicate over selected Wi-Fi or cellular access networks. Such

use performs the claimed steps when the Accused Samsung Product communicates with a second terminal or network endpoint through a heterogeneous communication system having alternative Wi-Fi and cellular access networks and a backbone network. *See, e.g.,*

- https://www.samsung.com/us/store

- https://www.samsung.com/us/support/contact

97.    Samsung directly infringes the asserted claims, including any method claims, of the '696 Patent when Samsung employees, agents, retail personnel, or representatives use Accused Samsung Products in Samsung stores, Samsung Experience Stores, authorized retail channels, service centers, repair locations, or other customer-facing locations in the United States. Samsung's public materials describe Samsung Experience Stores where customers can get hands-on with the latest Galaxy phones and tablets and obtain expert support, repairs, and one-on-one consultations. On information and belief, Samsung personnel use Accused Samsung Products in those locations to demonstrate connectivity, configure Wi-Fi and cellular settings, enable or explain Intelligent Wi-Fi, demonstrate Wi-Fi Calling, switch between Wi-Fi and cellular networks, test internet connectivity, and otherwise operate the Accused Connectivity Functionality. *See, e.g.,*

- https://www.samsung.com/us/store

- https://www.samsung.com/us/support/service/locations

- https://www.samsung.com/us/support/service/we-come-to-you

- https://www.samsung.com/us/support/contact

- https://www.samsung.com/us/support/troubleshoot/TSG10004906

98.    Samsung directly infringes the asserted claims, including any method claims, of the '696 Patent when Samsung employees, agents, retail personnel, support personnel, or representatives demonstrate Accused Samsung Products to customers in the United States. Such

31

demonstrations include, for example, showing customers how to connect to Wi-Fi, how to enable Wi-Fi Calling, how to use mobile data, how to configure Intelligent Wi-Fi, how to enable Switch to mobile data, how to enable Switch to better Wi-Fi networks, how to enable Turn Wi-Fi on/off automatically, how to use Wi-Fi power saving mode, how to troubleshoot Wi-Fi or cellular data, and how the device communicates through selected Wi-Fi or cellular networks. Those demonstrations constitute direct uses of the Accused Instrumentalities. *See, e.g.,* citations for previous paragraph.

99.     Samsung directly infringes the asserted claims, including any method claims, of the '696 Patent when Samsung employees, agents, support personnel, service personnel, repair personnel, or representatives use a customer's Samsung device to help the customer operate, configure, repair, or troubleshoot the device. Samsung's public support and repair materials describe Samsung experts, walk-in repairs, in-store repairs, mobile repair, and one-on-one support. On information and belief, in providing such support, Samsung personnel use customer devices to connect to Wi-Fi, enable or disable mobile data, configure Wi-Fi Calling, configure Intelligent Wi-Fi, test network connections, reproduce Wi-Fi or cellular problems, verify whether the device switches to mobile data, verify whether Wi-Fi calling works, reset or restore network settings, install updates, and otherwise operate the Accused Connectivity Functionality. When Samsung personnel perform those acts using a customer's Accused Samsung Product, Samsung directly infringes by using the Accused Instrumentalities and, for asserted method claims, by performing the claimed method steps. *See, e.g.,* citations for previous 2 paragraphs.

100.     Samsung's direct infringement is not limited to sales of finished products. Samsung's direct infringement also includes importing infringing Accused Samsung Products, offering them for sale, selling them, using them for development and validation, testing them with

Wi-Fi and cellular networks, certifying them for U.S. use, performing carrier and network interoperability testing, demonstrating them to customers, using them in stores, repairing and troubleshooting them, configuring them for customers, installing or validating software updates on them, and otherwise operating them in a manner that performs the claimed heterogeneous-network communication functionality.

101. Samsung's direct infringement of the '696 Patent therefore includes multiple independent categories of infringing conduct: selling and offering to sell Accused Samsung Products that embody the asserted non-method claims; importing Accused Samsung Products that embody the asserted non-method claims; making or completing infringing configurations of Accused Samsung Products in the United States to the extent Samsung performs such acts domestically; using Accused Samsung Products in development, testing, certification, validation, support, repair, retail, demonstration, and employee-use workflows; and performing any asserted method steps of the '696 Patent through Samsung personnel and persons acting for Samsung in the United States.

102. Samsung's acts of direct infringement have caused damage to Estech. Estech is entitled to recover damages adequate to compensate it for Samsung's infringement of the '696 Patent, but in no event less than a reasonable royalty.

## COUNT II – INFRINGEMENT OF THE '651 PATENT

103. Estech incorporates herein the allegations made in paragraphs 1 through 102.

104. Samsung has directly infringed (either literally or under the doctrine of equivalents) one or more claims of the '651 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Instrumentalities.

33

105.    The Accused Instrumentalities include, for example, the Accused Samsung Products that were made, used, tested, sold, offered for sale, imported, distributed, or supported in the United States on or before May 13, 2024, including Samsung-branded smartphones and cellular-enabled Samsung-branded tablets having Wi-Fi and cellular communication capability and incorporating the Accused Connectivity Functionality.

106.    The Accused Instrumentalities infringe at least claim 1 of the '651 Patent.  Claim 1 recites an apparatus comprising one or more machine-readable media configured to store a program comprising a plurality of executable instructions, a processor coupled to the machine-readable media and configured to execute the plurality of executable instructions, and a program configured to facilitate communication with a first access network and a second access network. Claim 1 further requires that the first and second access networks provide access for a terminal to a backbone network and operate as alternatives to one another, and that the program comprise a session convergence layer and a transport convergence layer.

107.    The Accused Samsung Products include one or more machine-readable media, including memory and storage, that store programs comprising executable instructions, including Samsung One UI instructions, Android instructions, firmware instructions, network-stack instructions, radio-control instructions, Wi-Fi instructions, cellular instructions, Wi-Fi Calling instructions, Intelligent Wi-Fi instructions, and other connectivity-management instructions.  The Accused Samsung Products also include one or more processors coupled to such machine-readable media and configured to execute those instructions.

108.    When executed by processors in the Accused Samsung Products, the accused software and firmware implement the Accused Connectivity Functionality and facilitate communication with first and second access networks.  For example, the Accused Samsung

Products communicate with Wi-Fi / WLAN / IP access networks and cellular / mobile data access networks.  Each of those access networks provides access for a terminal to a backbone network, including, for example, the Internet, an IP network, a carrier network, an IMS network, a VoLTE network, a VoWiFi network, a provider network, an application-server network, a web-server network, a cloud network, or another backbone network.

109.    The first access network and second access network are configured to operate as alternatives to one another.  For example, the Accused Connectivity Functionality causes an Accused Samsung Product to use Wi-Fi when Wi-Fi is available, suitable, preferred, strong, fast, stable, or otherwise appropriate, and to use cellular / mobile data when Wi-Fi is unavailable, unstable, slow, weak, unsuitable, not preferred, or otherwise inappropriate.  Likewise, the Accused Connectivity Functionality causes the Accused Samsung Product to switch back to Wi-Fi when Wi-Fi becomes available, strong, stable, or suitable.  In that manner, Wi-Fi / WLAN and cellular / mobile data networks operate as alternative access networks.  *See, e.g.,*

- https://www.samsung.com/us/support/answer/ANS10002546

- https://docs.samsungknox.com/admin/knox-platform-for-enterprise/kbas/kba-360034073174.

110.    The Accused Connectivity Functionality includes session-management or session-convergence functionality that manages, coordinates, or accounts for communication sessions, application requirements, resource availability, user preferences, network availability, network stability, network speed, network quality, signal strength, service availability, power consumption, and other criteria across heterogeneous access networks.  That functionality corresponds to the claimed session convergence layer.  The Accused Connectivity Functionality also includes transport-management or transport-convergence functionality that determines which

35

available access network should be used to send, receive, maintain, or continue communications, including packets, data, voice, video, messages, web traffic, email, chat communications, application traffic, and other information. The Accused Connectivity Functionality uses that transport-management functionality to select between Wi-Fi / WLAN and cellular / mobile data networks and to cause the Accused Samsung Product to receive or transmit information using the selected access network. That functionality corresponds to the claimed transport convergence layer. *See, e.g.*,

- https://developer.android.com/develop/connectivity/network-ops/reading-network-state

- https://developer.android.com/training/monitoring-device-state/connectivity-status-type.

111. Samsung's own materials confirm that the Accused Samsung Products include the accused network-selection and network-switching functionality. Samsung materials describe functionality including Intelligent Wi-Fi, Switch to mobile data, Switch to better Wi-Fi networks, Turn Wi-Fi on/off automatically, Wi-Fi power saving mode, and Wi-Fi Calling functionality. Samsung materials further describe switching to mobile data when Wi-Fi is unstable or slow, switching back to Wi-Fi when Wi-Fi is strong, automatically switching to better Wi-Fi networks, turning Wi-Fi on or off in frequently used locations, using mobile data when a Wi-Fi connection cannot be established, and enabling Wi-Fi Calling over Wi-Fi while using active cellular service through a SIM or eSIM. *See, e.g.*,

- https://www.samsung.com/us/support/answer/ANS10002546

- https://docs.samsungknox.com/admin/knox-platform-for-enterprise/kbas/kba-360034073174;

- https://docs.samsungknox.com/admin/knox-configure/how-to-guides/profiles/configure-profile-settings/connectivity

- https://www.samsung.com/us/support/answer/ANS10001348.

112. Android materials likewise confirm that Android devices include software functionality for monitoring network connections, including Wi-Fi and mobile networks; attempting to fail over to another network when connectivity is lost; querying available networks; requesting and selecting networks for data traffic; identifying network transports such as Wi-Fi and mobile; identifying network capabilities such as Internet access, validation, and meteredness; and changing the default network between Wi-Fi and mobile networks. On information and belief, the Accused Samsung Products use Samsung, Android, and related software and firmware to perform the Accused Connectivity Functionality described herein. *See, e.g.*,

- https://developer.android.com/develop/connectivity/network-ops/reading-network-state

- https://developer.android.com/training/monitoring-device-state/connectivity-status-type.

113. Samsung's infringement of the '651 Patent occurred during the applicable limitations period and before the '651 Patent expired on May 13, 2024. Estech does not assert induced infringement or contributory infringement of the expired '651 Patent in this Count.

114. Since issuance of the '651 Patent, neither Estech nor its predecessors or licensees have made, offered for sale, sold, or imported a product that practices any claim of the '651 Patent or that would otherwise require marking under 35 U.S.C. § 287.

115. Estech may recover pre-suit damages for Samsung's infringement of the '651 Patent under 35 U.S.C. § 287.

116. As a result of Samsung's infringement of the '651 Patent, Estech has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

**<u>Direct infringement of the '651 Patent under 35 U.S.C. § 271(a)</u>**

117.   On information and belief, Samsung directly infringes claim 1 and other non-method claims of the '651 Patent by selling and offering to sell the Accused Samsung Products in the United States.  When sold or offered for sale, the Accused Samsung Products already include the claimed apparatus components, including one or more machine-readable media storing a program comprising executable instructions, one or more processors coupled to the machine-readable media and configured to execute those instructions, and programs configured to facilitate communication with first and second access networks that operate as alternatives to one another. The Accused Samsung Products are therefore infringing articles when Samsung sells or offers to sell them in the United States.  *See, e.g.,*

- https://www.samsung.com/us/smartphones/all-smartphones

- https://www.samsung.com/us/tablets

- https://www.samsung.com/us/terms-of-sale.

118.   On information and belief, Samsung directly infringes claim 1 and other non-method claims of the '651 Patent by importing the Accused Samsung Products into the United States.  When imported, the Accused Samsung Products include memory and storage containing executable instructions that implement the Accused Connectivity Functionality, including the claimed session convergence layer and transport convergence layer.  Importation of those infringing Accused Samsung Products constitutes direct infringement of the non-method claims of the '651 Patent.  *See, e.g.,*

- https://www.samsung.com/us/terms-of-sale

- https://www.samsung.com/us/support/answer/ANS10002546

- https://www.samsung.com/us/support/answer/ANS10001348.

119.     On information and belief, to the extent Samsung makes, assembles, completes, refurbishes, reconditions, repairs, replaces, configures, flashes, updates, or otherwise creates an accused infringing configuration of the Accused Samsung Products in the United States, Samsung directly infringes claim 1 and other non-method claims of the '651 Patent by making infringing products in the United States.  Such conduct includes, for example, loading, installing, updating, validating, configuring, or restoring software or firmware that implements the Accused Connectivity Functionality on Accused Samsung Products in the United States.  Samsung's Certified Re-Newed materials further support domestic refurbishment and reconditioning allegations because Samsung describes expert inspection, genuine-parts replacement, and a 147-point quality test for Certified Re-Newed Galaxy devices.  *See, e.g.*,

- https://www.samsung.com/us/smartphones/certified-re-newed-phones

- https://www.samsung.com/us/support/answer/ANS10002546.

120.     Samsung also directly infringes the asserted claims of the '651 Patent by using the Accused Instrumentalities in the United States.  Samsung's use includes, without limitation, testing, quality assurance, software validation, carrier certification, regulatory certification, field testing, interoperability testing, retail demonstration, customer demonstration, technical support, repair, refurbishment, replacement, troubleshooting, configuration, and ordinary employee use of Accused Samsung Products with Wi-Fi and cellular networks.  *See, e.g.*,

- https://www.samsung.com/us/store

- https://www.samsung.com/us/samsung-experience-store/services-events/repair

- https://www.samsung.com/us/support/service/locations

- https://www.samsung.com/us/support/contact

- https://www.samsung.com/us/support/service/we-come-to-you

39

- https://www.samsung.com/us/support/troubleshoot/TSG10004906.

121.    Samsung directly infringes the asserted claims, including any asserted method claims, of the '651 Patent, when Samsung personnel, agents, representatives, engineers, technicians, retail personnel, support personnel, repair personnel, or other persons acting on Samsung's behalf perform the claimed method steps in the United States by using the Accused Instrumentalities.   Those acts include executing, by a processor, a plurality of executable instructions of a program stored in one or more machine-readable media; facilitating communication with a first access network and a second access network according to the program; selecting one network of the first and second access networks; and communicating information to or from the selected one network.   Such acts also include using programs comprising session-convergence and transport-convergence functionality to communicate over alternative Wi-Fi / WLAN and cellular / mobile data access networks that provide access to a backbone network.

122.    Samsung uses the Accused Samsung Products, or performs such infringing method steps, when it tests Accused Samsung Products in the United States.   For example, during development, validation, quality assurance, network interoperability testing, carrier-certification testing, field testing, software-update testing, troubleshooting, and repair testing, Samsung personnel and persons acting on Samsung's behalf use Accused Samsung Products with Wi-Fi and cellular networks to send and receive data, make and receive calls, send and receive messages, access web pages, use email, use chat communications, use video communications, and otherwise communicate through a selected Wi-Fi or cellular access network.   In those activities, the Accused Samsung Product operates as a terminal communicating through a heterogeneous communication system comprising Wi-Fi / WLAN and cellular / mobile data access networks and a backbone network.

123.    Samsung's public FCC-related filings and equipment-authorization records also support the allegation that Samsung performs, directs, controls, or causes testing of Accused Samsung Products for the U.S. market.  On information and belief, Samsung, Samsung personnel, and/or testing laboratories or certification entities acting for Samsung perform certification, pre-certification, regulatory, radio-frequency, wireless, Wi-Fi, cellular, and interoperability testing of Accused Samsung Products intended for sale and use in the United States.  To the extent such testing occurs in the United States and includes operation of the Accused Connectivity Functionality, that conduct constitutes direct infringement by Samsung of the asserted claims, including any asserted method claims of the '651 Patent.  Estech does not allege that the FCC itself directly infringes; rather, Estech alleges that Samsung and persons acting for Samsung perform or cause infringing testing and certification activities for Samsung's Accused Samsung Products. *See, e.g.,*

- https://www.fcc.gov/engineering-technology/laboratory-division/general/equipment-authorization;

- https://www.fcc.gov/general/equipment-authorization-procedures

- https://www.ecfr.gov/current/title-47/chapter-I/subchapter-A/part-2/subpart-J

- https://fcc.report/company/Samsung-Electronics-Co-L-T-D

- https://fccid.io/A3LSMG991U.

124.    Samsung directly infringes the asserted claims, including any asserted method claims, of the '651 Patent when Samsung employees and other persons acting on Samsung's behalf use Accused Samsung Products generally in the United States.  On information and belief, Samsung employees use company-owned, demo, test, support, or personal Accused Samsung Products with Wi-Fi and cellular networks, including to make or receive calls, send or receive

messages, access web pages, send or receive email, use chat applications, use video-call applications, use real-time data applications, and otherwise communicate over selected Wi-Fi or cellular access networks. Such use performs the claimed steps when the Accused Samsung Product executes stored instructions, facilitates communication with alternative first and second access networks, selects one of those access networks, and communicates information to or from the selected network.

125. Samsung directly infringes the asserted claims, including any asserted method claims, of the '651 Patent when Samsung employees, agents, retail personnel, or representatives use Accused Samsung Products in Samsung stores, Samsung Experience Stores, authorized retail channels, service centers, repair locations, or other customer-facing locations in the United States. Samsung's public materials describe Samsung Experience Stores where customers can get hands-on with Samsung products and receive expert support, repair assistance, device troubleshooting, and one-on-one consultations. On information and belief, Samsung personnel use Accused Samsung Products in those locations to demonstrate connectivity, configure Wi-Fi and cellular settings, enable or explain Intelligent Wi-Fi, demonstrate Wi-Fi Calling, switch between Wi-Fi and cellular networks, test internet connectivity, and otherwise operate the Accused Connectivity Functionality. *See, e.g.*,

- https://www.samsung.com/us/store

- https://www.samsung.com/us/samsung-experience-store/services-events/repair

- https://www.samsung.com/us/support/service/locations.

126. Samsung directly infringes the asserted claims, including any asserted method claims, of the '651 Patent when Samsung employees, agents, retail personnel, support personnel, or representatives demonstrate Accused Samsung Products to customers in the United States. Such

demonstrations include, for example, showing customers how to connect to Wi-Fi, how to enable Wi-Fi Calling, how to use mobile data, how to configure Intelligent Wi-Fi, how to enable Switch to mobile data, how to enable Switch to better Wi-Fi networks, how to enable Turn Wi-Fi on/off automatically, how to use Wi-Fi power saving mode, how to troubleshoot Wi-Fi or cellular data, and how the device communicates through selected Wi-Fi or cellular networks.   Those demonstrations constitute direct uses of the Accused Instrumentalities and, when the asserted method claims are practiced, direct infringement of the '651 Patent.  *See, e.g.,*

- https://www.samsung.com/us/support/answer/ANS10002546

- https://www.samsung.com/us/support/answer/ANS10001348

- https://www.samsung.com/us/store.

127.    Samsung directly infringes any asserted method claims of the '651 Patent when Samsung employees, agents, support personnel, service personnel, repair personnel, or representatives use a customer's Samsung device to help the customer operate, configure, repair, or troubleshoot the device.  Samsung's public support and repair materials describe Samsung experts, walk-in repairs, in-store repairs, mobile repair, and one-on-one support.  On information and belief, in providing such support, Samsung personnel use customer devices to connect to Wi-Fi, enable or disable mobile data, configure Wi-Fi Calling, configure Intelligent Wi-Fi, test network connections, reproduce Wi-Fi or cellular problems, verify whether the device switches to mobile data, verify whether Wi-Fi Calling works, reset or restore network settings, install updates, and otherwise operate the Accused Connectivity Functionality.  When Samsung personnel perform those acts using a customer's Accused Samsung Product, Samsung directly infringes by using the Accused Instrumentalities and, for asserted method claims, by performing the claimed method steps. *See, e.g.,*

43

- https://www.samsung.com/us/support/contact

- https://www.samsung.com/us/support/service/locations

- https://www.samsung.com/us/support/service/we-come-to-you

- https://www.samsung.com/us/support/troubleshoot/TSG10004906.

128.  Samsung's direct infringement is not limited to sales of finished products. Samsung's direct infringement also includes importing infringing Accused Samsung Products, offering them for sale, selling them, making or completing infringing configurations of them in the United States to the extent Samsung performs such acts domestically, using them for development and validation, testing them with Wi-Fi and cellular networks, certifying them for U.S. use, performing carrier and network interoperability testing, demonstrating them to customers, using them in stores, repairing and troubleshooting them, configuring them for customers, installing or validating software updates on them, and otherwise operating them in a manner that practices the claimed heterogeneous-network communication functionality.

129.  Samsung's direct infringement of the '651 Patent therefore includes multiple independent categories of infringing conduct: selling and offering to sell Accused Samsung Products that embody the asserted non-method claims; importing Accused Samsung Products that embody the asserted non-method claims; making or completing infringing configurations of Accused Samsung Products in the United States to the extent Samsung performs such acts domestically; using Accused Samsung Products in development, testing, certification, validation, support, repair, retail, demonstration, and employee-use workflows; and performing any asserted method steps of the '651 Patent through Samsung personnel and persons acting for Samsung in the United States.

130.    Samsung's acts of direct infringement have caused damage to Estech.  Estech is entitled to recover damages adequate to compensate it for Samsung's infringement of the '651 Patent, but in no event less than a reasonable royalty.

### COUNT III – INFRINGEMENT OF THE '590 PATENT

131.    Estech incorporates herein the allegations made in paragraphs 1 through 130.

132.    Samsung has directly infringed, either literally or under the doctrine of equivalents, one or more claims of the '590 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a). Samsung directly infringes the asserted method claims, including claim 1, by using the Accused Instrumentalities in the United States, including through Samsung personnel, agents, representatives, retail personnel, technical-support personnel, engineers, quality-assurance personnel, carrier-certification personnel, sales personnel, repair personnel, and other persons acting on Samsung's behalf who use Accused Samsung Products with Wi-Fi and cellular communication services to perform the claimed method steps.  Samsung directly infringes any asserted non-method claims of the '590 Patent, including any asserted apparatus claims, by making, using, selling, offering to sell, and/or importing into the United States infringing products, including but not limited to the Accused Instrumentalities.

133.    The Accused Instrumentalities include, for example, the Accused Samsung Products that were and are being made, used, tested, sold, offered for sale, imported, distributed, or supported in the United States during the applicable limitations period and while the '590 Patent remains in force, including Samsung-branded smartphones and cellular-enabled Samsung-branded tablets having Wi-Fi and cellular communication capability and incorporating the Accused Connectivity Functionality.

134.    The Accused Instrumentalities infringe at least claim 1 of the '590 Patent.  Claim

1 recites a method for selecting a communication service, including receiving, at a communication handset, a request for an inbound or outbound communication while the communication handset is registered with one type of communication service but is not scanning for a second type of communication service; determining, in response to the request, whether the second type of communication service is available; switching a component on the communication handset from an asleep state to an awake state in response to the request; registering the communication handset with the second type of communication service; comparing metrics of the one type of communication service with metrics of the second type of communication service; selecting between the two types of communication services based on the comparison of metrics; and responding to the request using the selected type of service.

135.    The Accused Samsung Products are communication handsets and mobile communication devices that include one or more processors, memory, non-transitory computer-readable media, Wi-Fi radios, cellular radios, baseband or modem components, antennas, batteries, SIM and/or eSIM functionality, operating-system software, Samsung One UI software, Android software, Wi-Fi software, cellular software, Wi-Fi Calling software, Intelligent Wi-Fi software, and other connectivity-management software and firmware.  On information and belief, those components and instructions are configured to implement the Accused Connectivity Functionality and to manage communications over Wi-Fi / WLAN and cellular / mobile data communication services.

136.    Samsung's own materials confirm that the Accused Samsung Products include functionality for selecting, switching, preferring, falling back to, and managing communications over Wi-Fi and cellular networks.  For example, Samsung materials describe Intelligent Wi-Fi features including Switch to mobile data, Switch to better Wi-Fi networks, Turn Wi-Fi on/off

automatically, Show network quality info, Prioritize real-time data, Detect suspicious networks, and Wi-Fi power saving mode.  Samsung states that Switch to mobile data causes a Galaxy device to switch to mobile data whenever the Wi-Fi connection is unstable and to switch back to Wi-Fi when the Wi-Fi signal is strong; that Switch to better Wi-Fi networks automatically switches to faster or more stable Wi-Fi networks; that Turn Wi-Fi on/off automatically turns Wi-Fi on or off in frequently used locations; that Show network quality info displays network speed and stability; that Prioritize real-time data gives network priority to games, video calls, and other tasks that may experience lag; and that Wi-Fi power saving mode enables Wi-Fi traffic analysis to reduce battery usage.  *See, e.g.*, https://www.samsung.com/us/support/answer/ANS10002546.

137.    Samsung Knox materials further confirm that Samsung introduced Switch to Mobile Data, formerly referred to as Smart Network Switch, to enable gray-area detection and automatic network switching from Wi-Fi to a mobile data network.  Samsung Knox materials describe Switch to Mobile Data as a technology that automatically switches from a mobile data network to Wi-Fi and vice versa, based on network quality, user preference, and network usage patterns.  Samsung Knox materials also describe Auto Wi-Fi as turning Wi-Fi on and off depending on location to avoid unwanted connections and higher power consumption.  Samsung Knox Configure materials further state that Switch to mobile data allows a device to use mobile data whenever the current Wi-Fi network is slow or unstable, that individual apps may switch to mobile data when a Wi-Fi connection cannot be established, that Wi-Fi may turn on automatically in locations where Wi-Fi has been used frequently, and that Wi-Fi power saving mode reduces battery consumption by analyzing Wi-Fi traffic patterns.  *See, e.g.*,

- https://docs.samsungknox.com/admin/knox-platform-for-enterprise/kbas/kba-360034073174

- https://docs.samsungknox.com/admin/knox-configure/how-to-guides/profiles/configure-profile-settings/connectivity.

138.     Samsung's Wi-Fi Calling materials further confirm that the Accused Samsung Products perform the accused service-selection functionality in the context of inbound and outbound calls.  Samsung states that Wi-Fi Calling allows users to make calls over a phone's network connection, that the phone must be connected to a Wi-Fi network and have active service via a SIM card or eSIM, and that users may choose a Calling Preference between Wi-Fi calling and the cellular network.  Samsung further states that, if the preferred network is not available, the alternative network will be used automatically.  *See, e.g.,*

- https://www.samsung.com/us/support/answer/ANS10001348.

139.     Android materials likewise confirm that Android devices include software functionality for monitoring and selecting networks, including Wi-Fi and mobile networks. Android materials state that NetworkCapabilities contains information about network transports such as Wi-Fi and mobile and about network capabilities such as Internet access, validation, and meteredness; that an Android-powered device can maintain many connections at the same time; that Android apps have a default network determined by the system; that the system typically prefers unmetered networks to metered ones and faster networks to slower ones; that the default network can change during the lifetime of an app; and that apps with appropriate permission may request that the system bring up a network that is not up, such as the mobile network when the device is connected to Wi-Fi.  *See, e.g.,*

- https://developer.android.com/develop/connectivity/network-ops/reading-network-state
- https://developer.android.com/training/monitoring-device-state/connectivity-status-type.

140.     In operation, the Accused Samsung Products practice claim 1 when they receive

a request for an inbound or outbound communication, including a phone call, Wi-Fi call, message, chat request, web-page request, email request, video call, application request, or other data communication, while the Accused Samsung Product is registered with, connected to, or otherwise using one type of communication service, such as cellular or Wi-Fi, but is not scanning for, is not actively using, has powered down, has disabled, has placed in a sleep or power-saving state, or has otherwise suppressed scanning for a second type of communication service, such as Wi-Fi or cellular.

141.    In response to such inbound or outbound communication requests, the Accused Connectivity Functionality determines whether the second type of communication service is available, wakes or activates one or more components used to determine availability of the second service, registers or connects the Accused Samsung Product with the second service, compares metrics of the two services, selects between them, and responds to the inbound or outbound communication request using the selected service.  Such metrics include, without limitation, network quality, speed, stability, signal strength, service availability, Internet access, validation, power consumption, battery usage, user preferences, usage patterns, application requirements, calling preferences, and whether a preferred network is unavailable.

142.    For example, when an Accused Samsung Product is using Wi-Fi and the Wi-Fi connection is slow, unstable, weak, unvalidated, unavailable, or otherwise unsuitable, the Accused Connectivity Functionality determines whether mobile data or cellular service is available, activates or wakes components associated with determining cellular availability or using cellular data, registers or connects with the cellular or mobile data service, compares metrics of Wi-Fi and cellular service, selects cellular or mobile data based on those metrics, and responds to the communication request using cellular or mobile data.  Conversely, when an Accused Samsung

49

Product is using cellular or mobile data and Wi-Fi becomes available, strong, stable, preferred, faster, or otherwise suitable, the Accused Connectivity Functionality determines whether Wi-Fi is available, activates or wakes Wi-Fi components, connects or registers with Wi-Fi, compares metrics of Wi-Fi and cellular service, selects Wi-Fi based on those metrics, and responds to the communication request using Wi-Fi.

143.    Similarly, when Wi-Fi Calling is enabled, an Accused Samsung Product may receive or initiate an inbound or outbound voice-call request while Wi-Fi or cellular is the currently preferred or active service.  The Accused Samsung Product then uses its Wi-Fi Calling, cellular, SIM/eSIM, and network-preference functionality to determine whether the alternative service is available, compare network availability and preferences, select between Wi-Fi and cellular service, and make or receive the call using the selected service.  Samsung's own materials explain that, for Wi-Fi Calling, a user may choose Wi-Fi calling or the cellular network, and that if the preferred network is not available, the alternative will be used automatically.  *See, e.g.,* https://www.samsung.com/us/support/answer/ANS10001348.

144.    Based on information and belief, Samsung had pre-suit knowledge of the '590 Patent because it has a policy or practice of not reviewing the patents of others, and thus has been willfully blind to the plaintiff's patent rights.  Samsung has had knowledge of the '590 Patent and of its infringement of the '590 Patent at least through the service of this Complaint.

145.    On information and belief, despite Samsung's knowledge of the '590 Patent and of its infringement of the '590 Patent, Samsung has not sought to remedy its infringement or sought to identify any good faith belief as to why it does not infringe the '590 Patent.

146.    On information and belief, Samsung's actions represented a specific intent to induce infringement of at least claim 1 of the '590 Patent.   For example, Samsung provided

customer support, instructions, user interfaces, settings, marketing materials, support pages, Samsung Knox materials, software updates, firmware updates, repair services, Samsung Experience Store services, and other materials that instruct and encourage customers and other third parties to use the Accused Samsung Products and Accused Connectivity Functionality in a manner that infringes the '590 Patent.

147.    Since issuance of the '590 Patent, neither Estech nor its predecessors or licensees have made, offered for sale, sold, or imported a product that practices any claim of the '590 Patent or that would otherwise require marking under 35 U.S.C. § 287.

148.    Estech may recover pre-suit damages for Samsung's infringement of the '590 Patent under 35 U.S.C. § 287.

149.    As a result of Samsung's infringement of the '590 Patent, Estech has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

150.    On information and belief, Samsung's direct and indirect infringement of the '590 Patent was and continues to be willful, intentional, deliberate, or in conscious disregard of Estech's rights under the '590 Patent.

**Direct infringement of the '590 Patent under 35 U.S.C. § 271(a)**

151.    Samsung directly infringes the asserted claims, including any asserted method claims, of the '590 Patent, including claim 1, by using the Accused Instrumentalities in the United States.  Samsung's use includes, without limitation, using Accused Samsung Products with Wi-Fi and cellular communication services to receive or initiate inbound and outbound communication requests, determine whether an alternative communication service is available, wake or activate a component used to determine availability of the alternative service, register or connect with the

alternative service, compare metrics of available services, select between Wi-Fi and cellular service, and respond to the communication request using the selected service.

152.    Samsung also directly infringes any asserted non-method claims of the '590 Patent, including any asserted apparatus claims, by selling and offering to sell the Accused Samsung Products in the United States.  When sold or offered for sale, the Accused Samsung Products already include the claimed communication-handset components, including software embodied on non-transitory computer-readable media and executed by processors, Wi-Fi and cellular radios, memory, batteries, modem or baseband components, antennas, SIM/eSIM functionality, Samsung One UI software, Android software, Wi-Fi software, cellular software, Wi-Fi Calling software, Intelligent Wi-Fi software, and other connectivity-management software and firmware.  The Accused Samsung Products are therefore infringing articles when Samsung sells or offers to sell them in the United States.  *See, e.g.,*

- https://www.samsung.com/us/smartphones/all-smartphones

- https://www.samsung.com/us/tablets

- https://www.samsung.com/us/terms-of-sale.

153.    Samsung directly infringes any asserted non-method claims of the '590 Patent, including any asserted apparatus claims, by importing the Accused Samsung Products into the United States.  When imported, the Accused Samsung Products include software and firmware embodied on non-transitory computer-readable media and configured to perform the Accused Connectivity Functionality.  Importation of those infringing Accused Samsung Products constitutes direct infringement of the non-method claims of the '590 Patent.  *See, e.g.,*

- https://www.samsung.com/us/terms-of-sale

- https://www.samsung.com/us/support/answer/ANS10002546

- https://www.samsung.com/us/support/answer/ANS10001348.

154.    On information and belief, to the extent Samsung makes, assembles, completes, refurbishes, reconditions, repairs, replaces, configures, flashes, updates, or otherwise creates an accused infringing configuration of the Accused Samsung Products in the United States, Samsung directly infringes any asserted non-method claims of the '590 Patent, including any asserted apparatus claims, by making infringing products in the United States.  Such conduct includes, for example, loading, installing, updating, validating, configuring, restoring, or reconditioning software or firmware that implements the Accused Connectivity Functionality on Accused Samsung Products in the United States.  Samsung's Certified Re-Newed materials support domestic refurbishment and reconditioning allegations because Samsung describes expert inspection, genuine-parts replacement, latest-software installation, and a 147-point quality test for Certified Re-Newed Galaxy devices.  *See, e.g.,*

- https://www.samsung.com/us/smartphones/certified-re-newed-phones

- https://www.samsung.com/us/support/answer/ANS10002546.

155.    Samsung directly infringes the asserted claims, including any asserted method claims, including claim 1, when Samsung personnel, agents, representatives, engineers, technicians, retail personnel, support personnel, repair personnel, or other persons acting on Samsung's behalf use the Accused Instrumentalities, or perform the claimed method steps in the United States using the Accused Instrumentalities.  Such use includes receiving or initiating inbound or outbound communication requests on Accused Samsung Products; using Wi-Fi, cellular, Wi-Fi Calling, Intelligent Wi-Fi, Switch to mobile data, Auto Wi-Fi, Wi-Fi power saving mode, and related connectivity-management functionality; determining whether an alternative Wi-Fi or cellular service is available; waking or activating components used to determine availability

of the alternative service; registering or connecting with the alternative service; comparing metrics of Wi-Fi and cellular services; selecting between such services; and responding to the communication request using the selected service.

156.    Samsung uses the Accused Samsung Products, or performs such infringing method steps, when it tests Accused Samsung Products in the United States.  For example, during development, validation, quality assurance, network interoperability testing, carrier-certification testing, field testing, software-update testing, troubleshooting, and repair testing, Samsung personnel and persons acting on Samsung's behalf use Accused Samsung Products with Wi-Fi and cellular networks to make and receive calls, use Wi-Fi Calling, send and receive messages, access web pages, use email, use chat communications, use video communications, use real-time data applications, and otherwise communicate through selected Wi-Fi or cellular services.  Such testing directly practices claim 1 and other asserted method claims when the Accused Samsung Product performs the claimed service-selection, wake-up, registration, metrics-comparison, and selected-service response steps.  *See, e.g.,*

- https://www.samsung.com/us/support/answer/ANS10002546

- https://www.samsung.com/us/support/answer/ANS10001348;

- https://developer.android.com/develop/connectivity/network-ops/reading-network-state.

157.    Samsung's public FCC-related filings and equipment-authorization records also support the allegation that Samsung performs, directs, controls, or causes testing of Accused Samsung Products for the U.S. market.  On information and belief, Samsung, Samsung personnel, and/or testing laboratories or certification entities acting for Samsung perform certification, pre-certification, regulatory, radio-frequency, wireless, Wi-Fi, cellular, and interoperability testing of Accused Samsung Products intended for sale and use in the United States.  To the extent such

testing occurs in the United States and includes operation of the Accused Connectivity Functionality, that conduct constitutes direct infringement by Samsung of the asserted claims, including claim 1 and any other asserted method claims of the '590 Patent. Estech does not allege that the FCC itself directly infringes; rather, Estech alleges that Samsung and persons acting for Samsung perform or cause infringing testing and certification activities for Samsung's Accused Samsung Products. *See, e.g.,*

- https://www.fcc.gov/engineering-technology/laboratory-division/general/equipment-authorization

- https://www.fcc.gov/general/equipment-authorization-procedures

- https://www.ecfr.gov/current/title-47/chapter-I/subchapter-A/part-2/subpart-J

- https://fcc.report/company/Samsung-Electronics-Co-L-T-D.

158.    Samsung directly infringes the asserted claims, including any asserted method claims, including claim 1, of the '590 Patent when Samsung employees and other persons acting on Samsung's behalf use Accused Samsung Products generally in the United States. On information and belief, Samsung employees use company-owned, demo, test, support, or personal Accused Samsung Products with Wi-Fi and cellular networks, including to make or receive calls, use Wi-Fi Calling, send or receive messages, access web pages, send or receive email, use chat applications, use video-call applications, use real-time data applications, and otherwise communicate over selected Wi-Fi or cellular services. Such use performs the claimed steps when the Accused Samsung Product receives or initiates a communication request, determines whether an alternative service is available, wakes or activates a component used to determine availability, registers or connects with the alternative service, compares metrics, selects a service, and responds to the request using the selected service. *See, e.g.,*

55

- https://www.samsung.com/us/store

- https://www.samsung.com/us/support/contact

- https://www.samsung.com/us/support/answer/ANS10002546

- https://www.samsung.com/us/support/answer/ANS10001348.

159.    Samsung directly infringes the asserted claims, including any asserted method claims, including claim 1, of the '590 Patent when Samsung employees, agents, retail personnel, or representatives use Accused Samsung Products in Samsung stores, Samsung Experience Stores, authorized retail channels, service centers, repair locations, or other customer-facing locations in the United States.  Samsung's public materials describe Samsung Experience Stores where customers can get hands-on with the latest Galaxy phones and tablets and obtain expert support, walk-in assistance, repairs, and one-on-one consultations.  On information and belief, Samsung personnel use Accused Samsung Products in those locations to demonstrate connectivity, configure Wi-Fi and cellular settings, enable or explain Intelligent Wi-Fi, demonstrate Wi-Fi Calling, switch between Wi-Fi and cellular networks, test internet connectivity, test voice calls or messages, and otherwise operate the Accused Connectivity Functionality.  *See, e.g.,*

- https://www.samsung.com/us/store

- https://www.samsung.com/us/support/service/locations

- https://www.samsung.com/us/support/service/we-come-to-you

- https://www.samsung.com/us/support/contact

- https://www.samsung.com/us/support/troubleshoot/TSG10004906.

160.    Samsung directly infringes the asserted claims, including any asserted method claims, including claim 1, of the '590 Patent when Samsung employees, agents, retail personnel, support personnel, or representatives demonstrate Accused Samsung Products to customers in the

United States. Such demonstrations include, for example, showing customers how to connect to Wi-Fi, how to enable Wi-Fi Calling, how to use mobile data, how to configure Intelligent Wi-Fi, how to enable Switch to mobile data, how to enable Switch to better Wi-Fi networks, how to enable Turn Wi-Fi on/off automatically, how to use Wi-Fi power saving mode, how to troubleshoot Wi-Fi or cellular data, how to make or receive calls, and how the device communicates through selected Wi-Fi or cellular services. Those demonstrations constitute direct uses of the Accused Instrumentalities and, when the asserted method claims are practiced, direct infringement of the '590 Patent. *See, e.g.,*

- https://www.samsung.com/us/support/answer/ANS10002546

- https://www.samsung.com/us/support/answer/ANS10001348

- https://www.samsung.com/us/store.

161. Samsung directly infringes the asserted claims, including any asserted method claims, including claim 1, of the '590 Patent when Samsung employees, agents, support personnel, service personnel, repair personnel, or representatives use a customer's Samsung device to help the customer operate, configure, repair, or troubleshoot the device. Samsung's public support and repair materials describe Samsung experts, walk-in repairs, in-store repairs, mobile repair, mail-in repair, Samsung Certified Technicians, and one-on-one support. On information and belief, in providing such support, Samsung personnel use customer devices to connect to Wi-Fi, enable or disable mobile data, configure Wi-Fi Calling, configure Intelligent Wi-Fi, test network connections, reproduce Wi-Fi or cellular problems, verify whether the device switches to mobile data, verify whether Wi-Fi Calling works, reset or restore network settings, install updates, and otherwise operate the Accused Connectivity Functionality. When Samsung personnel perform those acts using a customer's Accused Samsung Product, Samsung directly infringes by using the

57

Accused Instrumentalities and, for asserted method claims, by performing the claimed method steps. *See, e.g.,*

- https://www.samsung.com/us/support/contact

- https://www.samsung.com/us/support/service/locations

- https://www.samsung.com/us/support/service/we-come-to-you

- https://www.samsung.com/us/support/service

- https://www.samsung.com/us/support/troubleshoot/TSG10004906.

162. Samsung also directly infringes through software-update, validation, and support activities. On information and belief, Samsung develops, distributes, validates, installs, configures, and supports software and firmware updates for Accused Samsung Products, including updates to Samsung One UI, Android, Wi-Fi, cellular, Wi-Fi Calling, Intelligent Wi-Fi, connectivity-management, power-management, and radio-control functionality. When Samsung personnel or persons acting on Samsung's behalf use Accused Samsung Products to install, validate, test, troubleshoot, or confirm such software and firmware updates in the United States, and the Accused Samsung Products perform the claimed service-selection method or embody any asserted non-method claims, Samsung directly infringes the '590 Patent. *See, e.g.,*

- https://www.samsung.com/us/support

- https://www.samsung.com/us/support/contact

- https://www.samsung.com/us/support/answer/ANS10002546

- https://developer.android.com/develop/connectivity/network-ops/reading-network-state.

163. Samsung's direct infringement is not limited to sales of finished products. Samsung's direct infringement also includes importing infringing Accused Samsung Products; offering them for sale; selling them; making, refurbishing, reconditioning, repairing, completing,

configuring, updating, or restoring infringing configurations of them in the United States to the extent Samsung performs such acts domestically; using them for development and validation; testing them with Wi-Fi and cellular networks; certifying them for U.S. use; performing carrier and network interoperability testing; demonstrating them to customers; using them in stores; repairing and troubleshooting them; configuring them for customers; installing or validating software updates on them; and otherwise operating them in a manner that practices the claimed communication-service selection, power-management, wake-up, registration, metric-comparison, and selected-service response functionality.

164.    Samsung's direct infringement of the '590 Patent therefore includes multiple independent categories of infringing conduct: selling and offering to sell Accused Samsung Products that embody any asserted non-method claims; importing Accused Samsung Products that embody any asserted non-method claims; making or completing infringing configurations of Accused Samsung Products in the United States to the extent Samsung performs such acts domestically; using Accused Samsung Products in development, testing, certification, validation, support, repair, retail, demonstration, and employee-use workflows; and performing the asserted method steps of the '590 Patent through Samsung personnel and persons acting for Samsung in the United States.

165.    Samsung's acts of direct infringement have caused damage to Estech.  Estech is entitled to recover damages adequate to compensate it for Samsung's infringement of the '590 Patent, but in no event less than a reasonable royalty.

**Inducement of the '590 Patent under 35 U.S.C. § 271(b)**

166.    Additionally, on information and belief, Samsung has also indirectly infringed and will continue to indirectly infringe one or more claims of the '590 Patent in violation of 35 U.S.C.

§ 271(b) by knowingly and intentionally inducing others to directly infringe the '590 Patent. Samsung has induced and continues to induce end users, customers, enterprise customers, carriers, retailers, distributors, service personnel, support personnel, and other third parties to directly infringe (literally or under the doctrine of equivalents) at least claim 1 of the '590 Patent by using the Accused Instrumentalities, including the Accused Samsung Products and the Accused Connectivity Functionality.    Samsung took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Instrumentalities in a manner that infringes one or more claims of the '590 Patent, including, for example, Claim 1 of the '590 Patent.    Such steps by Samsung included, among other things, advising or directing end-users and other third-parties to use the Accused Instrumentalities in an infringing manner; advertising and promoting the use of the Accused Instrumentalities in an infringing manner; or distributing instructions that guide end-users and other third-parties to use the Accused Instrumentalities in an infringing manner.    Samsung performed these steps, which constitute induced infringement with the knowledge of the '590 Patent and with the knowledge that the induced acts constitute infringement.    Samsung was aware that the normal and customary use of the Accused Instrumentalities by others would infringe the '590 Patent.

167.    Samsung takes active steps, directly or through contractual relationships with others, with the specific intent to cause end users and other third parties to use the Accused Instrumentalities in a manner that infringes one or more claims of the '590 Patent, including, for example, claim 1.    Such steps include, among other things, designing, manufacturing, importing, distributing, selling, offering for sale, updating, configuring, marketing, advertising, promoting, supporting, and providing instructions for the Accused Samsung Products and the Accused Connectivity Functionality.    Such steps further include advising, instructing, encouraging, and

directing end users and other third parties to enable, configure, and use Intelligent Wi-Fi, Switch to mobile data, Switch to better Wi-Fi networks, Turn Wi-Fi on/off automatically, Wi-Fi power saving mode, Wi-Fi Calling, Calling Preference, Mobile network preferred, Wi-Fi preferred, Auto network switch, Smart Network Switch, Switch to Mobile Data, and substantially similar Wi-Fi / cellular switching, fallback, power-management, and communication-service-selection functionality. *See, e.g.,*

- https://www.samsung.com/us/support/answer/ANS10002546

- https://docs.samsungknox.com/admin/knox-platform-for-enterprise/kbas/kba-360034073174

- https://docs.samsungknox.com/admin/knox-configure/how-to-guides/profiles/configure-profile-settings/connectivity

- https://www.samsung.com/us/support/answer/ANS10001348

168.	End users and other third parties directly infringe claim 1 of the '590 Patent when they use the Accused Samsung Products to select between Wi-Fi and cellular communication services in response to inbound or outbound communication requests. For example, end users directly infringe when an Accused Samsung Product receives or initiates a phone call, Wi-Fi call, message, chat request, web-page request, email request, video call, application request, or other data communication while the device is registered with, connected to, or otherwise using one type of communication service, but is not scanning for, is not actively using, has powered down, has disabled, has placed in a sleep or power-saving state, or has otherwise suppressed scanning for a second type of communication service. In response to that communication request, the Accused Samsung Product determines whether the second type of communication service is available, wakes or activates one or more components used to determine availability of the second service,

registers or connects with the second service, compares metrics of the two services, selects between them, and responds to the communication request using the selected service.

169.    Samsung's own materials teach, instruct, and encourage end users and other third parties to perform the accused acts.  For example, Samsung instructs users how to access Intelligent Wi-Fi settings and how to enable or disable Switch to mobile data, Switch to better Wi-Fi networks, Turn Wi-Fi on/off automatically, Show network quality info, Prioritize real-time data, and Wi-Fi power saving mode.  Samsung states that Switch to mobile data causes a device to switch to mobile data whenever the Wi-Fi connection is unstable and to switch back to Wi-Fi when the Wi-Fi signal is strong; that Switch to better Wi-Fi networks automatically switches to Wi-Fi networks that are faster or more stable; that Turn Wi-Fi on/off automatically turns Wi-Fi on or off in frequently used locations; that Show network quality info displays speed and stability; that Prioritize real-time data gives network priority to games, video calls, and other tasks that may experience lag; and that Wi-Fi power saving mode enables Wi-Fi traffic analysis to reduce battery usage.  *See, e.g.,* https://www.samsung.com/us/support/answer/ANS10002546.

170.    Samsung Knox materials likewise teach, instruct, and encourage infringing use of the Accused Connectivity Functionality.  Samsung Knox materials describe Switch to Mobile Data, formerly referred to as Smart Network Switch, as technology that enables gray-area detection and automatic network switching from Wi-Fi to a mobile data network.  Samsung Knox materials further describe Switch to Mobile Data as technology that automatically switches from a mobile data network to Wi-Fi and vice versa, based on network quality, user preference, and network usage patterns.  Samsung Knox materials also describe Auto Wi-Fi as turning Wi-Fi on and off depending on location to avoid unwanted connections and higher power consumption, and describe Samsung's connection manager as automatically switching networks based on both network

62

quality and user preference. *See, e.g.,* https://docs.samsungknox.com/admin/knox-platform-for-enterprise/kbas/kba-360034073174.

171.    Samsung Knox Configure materials further teach, instruct, and encourage infringing use of the Accused Connectivity Functionality by enterprise customers, administrators, device managers, and end users.  Samsung Knox Configure materials instruct that Switch to mobile data allows the device to use mobile data whenever the current Wi-Fi network is identified as slow or unstable; that Allow individual apps to switch allows the device to switch apps to mobile data when a Wi-Fi connection cannot be established; that Turn on Wi-Fi automatically allows the device to enable Wi-Fi in locations where Wi-Fi has been used frequently; and that Wi-Fi power saving mode reduces battery consumption by analyzing Wi-Fi traffic patterns.  *See, e.g.,* https://docs.samsungknox.com/admin/knox-configure/how-to-guides/profiles/configure-profile-settings/connectivity.

172.    Samsung's Wi-Fi Calling materials also teach, instruct, and encourage infringing use in the context of inbound and outbound voice-call requests.  Samsung instructs users how to enable Wi-Fi Calling on Galaxy phones, explains that Wi-Fi Calling allows users to make calls over a phone's network connection, states that the phone must be connected to a Wi-Fi network and have active service via a SIM card or eSIM, and instructs users how to set a Calling Preference. Samsung further states that users may choose whether they prefer to use Wi-Fi calling or the cellular network, and that if the preferred network is not available, the alternative network will be used automatically.  *See, e.g.,*

- https://www.samsung.com/us/support/answer/ANS10001348

- https://www.samsung.com/ae/support/mobile-devices/how-to-enable-the-wi-fi-calling-function-on-a-galaxy-phone/

173.    Samsung further induces infringement by providing customer support, Samsung Experience Store services, repair services, mobile support, troubleshooting instructions, software updates, user-interface settings, and technical-support materials that instruct and encourage customers and service personnel to configure and use the Accused Connectivity Functionality. Samsung's public support materials state that Samsung provides online chat support from experts for computers, mobile devices, and tablets.  Samsung's Samsung Experience Store materials state that customers can get hands-on with the latest phones and tablets and obtain personalized expert support, walk-ins, repairs, and one-on-one consultations.  Samsung's repair materials state that Samsung provides repair-service channels and Samsung Mobile certified repair technicians who perform diagnostic testing to identify and troubleshoot device problems.  *See, e.g.,*

- https://www.samsung.com/us/support/
- https://www.samsung.com/us/store/
- https://www.samsung.com/us/support/service/
- https://www.samsung.com/us/support/find-mobile-care/
- https://www.samsung.com/us/support/troubleshoot/TSG10004906

174.    Samsung's inducement includes providing instructions and support that cause customers and other third parties to perform the claimed method steps in ordinary use of the Accused Samsung Products.  Such ordinary use includes using Wi-Fi Calling for inbound and outbound calls, using mobile data when Wi-Fi is unstable or slow, switching back to Wi-Fi when Wi-Fi becomes strong or preferred, allowing individual apps to switch to mobile data when Wi-Fi cannot be established, turning Wi-Fi on automatically in frequently used locations, using Wi-Fi power saving mode, and using Android/Samsung connectivity functionality that monitors Wi-Fi

and mobile network availability, capabilities, Internet access, validation, meteredness, network speed, network quality, stability, signal strength, battery usage, and user preferences.

175.    Android materials further support that the Accused Samsung Products include and use software functionality for monitoring, requesting, and selecting networks, including Wi-Fi and cellular/mobile networks.  Android materials state that ConnectivityManager provides an API that enables devices and applications to request that the device connect to a network based on conditions including device capabilities and data transport options.  Android materials further state that Android can specify network transport types such as Wi-Fi, ethernet, and cellular, can identify Internet capability, can receive callbacks when a network becomes available or lost, and can obtain information about network capabilities.  *See, e.g.,*

- https://developer.android.com/training/monitoring-device-state/connectivity-status-type

- https://developer.android.com/develop/connectivity/network-ops/reading-network-state

- https://developer.android.com/reference/android/net/ConnectivityManager

176.    On information and belief, Samsung knows that the normal, intended, and customary use of the Accused Samsung Products and Accused Connectivity Functionality by end users and other third parties directly infringes at least claim 1 of the '590 Patent.  Samsung nevertheless continues and will continue to provide the Accused Samsung Products, Accused Connectivity Functionality, instructions, support, settings, user interfaces, marketing materials, software updates, firmware updates, Samsung Knox materials, Samsung support pages, Samsung Experience Store services, repair services, and other materials that instruct, encourage, and facilitate infringing use.

177.    Samsung's induced infringement is ongoing.  Samsung's continued distribution, sale, support, update, configuration, promotion, and instruction of the Accused Samsung Products

and Accused Connectivity Functionality constitutes knowing and intentional inducement of infringement of at least claim 1 of the '590 Patent.

### Contributory Infringement of the '590 Patent under 35 U.S.C. § 271(c)

178.    Samsung has also indirectly infringed and will continue to indirectly infringe by contributing to the infringement of the '590 Patent under 35 U.S.C. § 271(c).  Samsung has contributed to the direct infringement of the '590 Patent by its end users, customers, enterprise customers, partners, carriers, retailers, contractors, distributors, clients, service personnel, support personnel, suppliers, and other third parties.  On information and belief, Samsung knows that the Accused Samsung Products and Accused Connectivity Functionality are especially made or especially adapted for use in infringing at least claim 1 of the '590 Patent, and are not staple articles or commodities of commerce suitable for substantial non-infringing use in the accused configuration.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '590 Patent, including, for example, claim 1 of the '590 Patent.  The special features can include, for example, the Accused Connectivity Functionality, Samsung's Intelligent Wi-Fi software and firmware, Switch to mobile data functionality, Switch to better Wi-Fi networks functionality, Turn Wi-Fi on/off automatically functionality, Auto Wi-Fi functionality, Wi-Fi power saving mode, Wi-Fi Calling functionality, Calling Preference functionality, Mobile network preferred functionality, Wi-Fi preferred functionality, Auto network switch functionality, Smart Network Switch functionality, Switch to Mobile Data functionality, Samsung One UI and Android connectivity-management software, Wi-Fi and cellular radio-control software, network-stack software, modem/baseband software, SIM/eSIM functionality, and/or related settings and user-interface controls for selecting, switching, preferring, falling back to, waking, activating,

registering with, comparing, or otherwise managing communications over Wi-Fi and cellular services. The special features constitute a material part of the invention of one or more of the claims of the '590 Patent and are not staple articles of commerce suitable for substantial non-infringing use. Samsung's contributory infringement is ongoing.

179. The material components of the patented invention supplied by Samsung include, without limitation, the Accused Connectivity Functionality and the device-resident hardware, software, firmware, and configuration features used to perform the claimed communication-service-selection functionality. Those material components include Samsung's Intelligent Wi-Fi software and firmware, Switch to mobile data functionality, Switch to better Wi-Fi networks functionality, Turn Wi-Fi on/off automatically functionality, Auto Wi-Fi functionality, Wi-Fi power saving mode, Wi-Fi Calling functionality, Calling Preference functionality, Mobile network preferred functionality, Wi-Fi preferred functionality, Auto network switch functionality, Smart Network Switch functionality, Switch to Mobile Data functionality, Samsung One UI and Android connectivity-management software, Wi-Fi and cellular radio-control software, network-stack software, modem/baseband software, SIM/eSIM functionality, and related settings and user-interface controls for selecting, switching, preferring, falling back to, waking, activating, registering with, comparing, or otherwise managing communications over Wi-Fi and cellular services.

180. Those material components are a material part of the inventions of the '590 Patent because they are the components that cause the Accused Samsung Products to receive or initiate inbound or outbound communication requests, determine whether an alternative communication service is available, wake or activate a component used to determine availability of the alternative service, register or connect with the alternative service, compare metrics of available Wi-Fi and

cellular services, select between those services, and respond to the communication request using the selected service.  The '590 Patent expressly concerns a handset that can use cellular and Wi-Fi service, stop scanning for an unavailable or unused service to conserve power, wake or activate a component in response to communication events, compare service metrics, and use a selected service to respond to inbound or outbound communications.

181.    In applying 35 U.S.C. § 271(c), the relevant material component is not necessarily the entire smartphone or tablet viewed at the highest level of generality.  Under *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009), an accused infringer does not avoid contributory-infringement liability merely because the relevant infringing functionality is embedded within a larger product that also has additional, separable features.  Here, the relevant material components include the Accused Connectivity Functionality and the software, firmware, and hardware configuration that perform the accused service-selection, power-management, wake-up, registration, metric-comparison, and selected-service response functionality, rather than the entire Galaxy smartphone or tablet viewed in the abstract.

182.    The Accused Connectivity Functionality, as supplied by Samsung in the Accused Samsung Products, is especially made and especially adapted for infringing use.  For example, Samsung's own materials identify and describe specific functionality for automatically switching between Wi-Fi and mobile data based on network quality, user preference, and network usage patterns; switching to mobile data whenever Wi-Fi is unstable; switching back to Wi-Fi when the Wi-Fi signal is strong; automatically switching to faster or more stable Wi-Fi networks; turning Wi-Fi on and off in frequently used locations; reducing battery consumption by analyzing Wi-Fi traffic patterns; and automatically using an alternative Wi-Fi or cellular network for Wi-Fi Calling when the preferred network is unavailable.  *See, e.g.,*

- https://www.samsung.com/us/support/answer/ANS10002546

- https://docs.samsungknox.com/admin/knox-platform-for-enterprise/kbas/kba-360034073174

- https://docs.samsungknox.com/admin/knox-configure/how-to-guides/profiles/configure-profile-settings/connectivity

- https://www.samsung.com/us/support/answer/ANS10001348

183.     The Accused Connectivity Functionality is not a staple article or commodity of commerce suitable for substantial non-infringing use in the accused configuration.  The accused material components are not merely generic Wi-Fi radios, cellular radios, processors, or memory considered in isolation.  Rather, they are the specific device-resident combination of Samsung/Android software, firmware, settings, radio-control logic, power-management logic, Wi-Fi Calling logic, Intelligent Wi-Fi logic, and Wi-Fi / cellular switching and fallback functionality that Samsung especially made and adapted to perform the accused service-selection method.  The normal, intended, and customary operation of those components is to determine Wi-Fi and cellular availability and quality, manage power consumption, enable or disable network scanning or use, select between Wi-Fi and cellular services, and use the selected service for communications.

184.     Samsung contributorily infringes by selling, offering to sell, importing, distributing, and supplying Accused Samsung Products that include the Accused Connectivity Functionality and the material components described above.  Samsung further contributorily infringes by providing software updates, firmware updates, settings, support materials, Samsung Knox configuration tools, user-interface controls, repair and support services, and instructions that supply, maintain, activate, configure, or restore the material components used to practice the claimed invention.

185.    End users and other third parties directly infringe at least claim 1 of the '590 Patent when they use the supplied material components in their normal, intended, and customary manner. Such direct infringement occurs when an Accused Samsung Product receives or initiates an inbound or outbound communication request while using one communication service and not scanning for, actively using, or otherwise maintaining an alternative communication service; determines whether the alternative service is available; wakes or activates a component used to determine availability of that service; registers or connects with the alternative service; compares metrics of the active and alternative services; selects between them; and responds to the communication request using the selected service.

186.    Samsung knows, at least as of the service of this Complaint, that the material components described above are especially made or adapted for use in infringing the '590 Patent and that those components are not staple articles or commodities of commerce suitable for substantial non-infringing use in the accused configuration. Samsung also knows, at least as of the service of this Complaint, that customers and other third parties directly infringe the '590 Patent when they use the Accused Samsung Products and Accused Connectivity Functionality in the normal, intended, and instructed manner described in Samsung's public materials, user interfaces, Samsung Knox materials, support materials, troubleshooting materials, and software functionality.

187.    Samsung's contributory infringement is ongoing.  Samsung's continued sale, offer for sale, importation, distribution, support, updating, configuration, and supply of the Accused Samsung Products and Accused Connectivity Functionality constitutes contributory infringement of at least claim 1 of the '590 Patent.

**JURY DEMAND**

Estech hereby requests a trial by jury on all issues so triable by right.

**PRAYER FOR RELIEF**

Estech requests that the Court find in its favor and against Samsung, and that the Court grant Estech the following relief:

a.      Judgment that one or more claims of the Patents-in-Suit have been infringed, either literally or under the doctrine of equivalents, by Samsung or all others acting in concert therewith;

b.      Judgment that Samsung accounts for and pays to Estech all damages to and costs incurred by Estech because of Samsung's infringing activities and other conduct complained of herein;

c.      As to the '590 Patent only, and only for the period after Samsung obtained knowledge of the '590 Patent and of its infringement, judgment that Samsung's infringement be found willful and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

d.      Pre-judgment and post-judgment interest on the damages caused by Samsung's infringing activities and other conduct complained of herein;

e.      That this Court declare this an exceptional case and award Estech its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

f.      All other and further relief as the Court may deem just and proper under the circumstances.

Dated: June 9, 2026          Respectfully submitted,


By: /s/ *Fred I. Williams*
Fred I. Williams
Texas State Bar No. 00794855

Lea N. Brigtsen
Texas State Bar No. 24054504
Stephen R. Dartt
Texas State Bar No. 24042370
WILLIAMS SIMONS & LANDIS PC
The Littlefield Building
106 East Sixth Street, Suite 900-168
Austin, TX 78701
Tel: 512-543-1354
fwilliams@wsltrial.com
lbrigtsen@wsltrial.com
sdartt@wsltrial.com

*Attorneys for Plaintiff Estech Systems IP, LLC*